[No. B206952. Second Dist., Div. Two. Mar. 11, 2009.]

AREATHA BIRL et al., Plaintiffs and Respondents, v.
HERITAGE CARE, LLC, et al., Defendants and Appellants.

1314

 

## COUNSEL

Morris Polich & Purdy, Marc Katz, Richard H. Nakamura, Maureen M. Home and Pamela A. Mixon for Defendants and Appellants.

Berglund & Johnson and Jerrie S. Weiss for Plaintiffs and Respondents.

## OPINION

**BOREN, P. J.**—This case involves claims of wrongful death of decedent Jerome Birl, elder abuse, and related causes of action brought against a nursing home facility and its owner. The issue on appeal is whether an arbitration clause should apply.

Defendants Heritage Care, LLC, doing business as Heritage Rehabilitation Center, and Roy Martinez (hereinafter collectively referred to as Heritage) appeal from the trial court's denial of their petition to compel arbitration of the claims made by plaintiffs Areatha Birl (wife), Joyce Ashley (daughter) and Regina Birl-Curtis (daughter). We conclude that because (1) the other codefendants in the action (the hospital and doctors) are third parties unaffected by this arbitration agreement, and (2) plaintiffs alleged several causes of action in their individual capacity as third parties not bound by the arbitration agreement, the trial court did not misapply the law (Code Civ. Proc., § 1281.2, subd. (c))[1] or abuse its broad discretion in refusing to enforce the arbitration agreement to avoid the possibility of conflicting rulings on common issues of law or fact.[2]

Therefore, we reject Heritage's position that would have resulted in severing claims against it from claims against other defendants and permitted only Heritage to defend in an arbitration context. We thus affirm the trial court's order.

### FACTUAL AND PROCEDURAL SUMMARY

As alleged in the first amended complaint, in March of 2006, Mr. Birl underwent surgery at the Kaiser Permanente Hospital at Sunset (hereinafter,

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2] It is thus unnecessary to address the other reason the trial court denied the petition to arbitrate, which was that the language, format, and font used in the written agreement did not comply with the requirements of Health and Safety Code, section 1599.81, as implemented by California Code of Regulations, title 22, section 72516, subdivision (d). Even assuming arguendo such flaws in the written arbitration agreement did not render it invalid, as Heritage contends, the trial court nonetheless did not abuse its discretion under section 1281.2, subdivision (c).

Kaiser) for a ventricular shunt replacement. Approximately a month later, even though Mr. Birl still needed acute hospital care, he was transferred to the Brier Oak Terrace Care Center nursing facility where he developed an infection from alleged improper care. He was then readmitted to Kaiser. Mr. Birl was then transferred to the Fountain View Subacute and Nursing Center, where he was again allegedly improperly cared for and developed another infection. He was then transferred back to Kaiser's emergency room. He remained at the hospital for several days until May 12, 2006, when he was discharged and then admitted to the Heritage nursing facility.

The staff at Heritage knew, based on Mr. Birl's medical history and the assessments performed on him there, that he was at high risk for infection, dehydration, malnutrition, and pressure ulcers if he was not provided with the necessary supervision, care, and services. As further alleged in the complaint, Heritage personnel nonetheless continually failed to keep Mr. Birl hydrated and failed to provide him with needed nutrition. As a result, his condition further deteriorated. On May 20, 2006, when Mr. Birl's family visited him, they found him unresponsive and his breathing very shallow. The staff did nothing to attend to him or to assess his condition.

Mr. Birl was transported by ambulance to Harbor-UCLA Medical Center. When he arrived at the emergency room, he was dehydrated, malnourished, and septic. Mr. Birl also had developed a decubitus pressure ulcer, which became infected because it had gone untreated. Mr. Birl died later that day.

As a member of Kaiser's health care plan, Mr. Birl received physician services from doctors working for Southern California Permanente Medical Group (SCPMG), which is a Kaiser affiliate. Kaiser/SCPMG doctors provided services to Mr. Birl at each of the residential nursing facilities to which he was sent, including Heritage.

However, as alleged in the complaint, while Mr. Birl was a patient at Heritage, the Kaiser/SCPMG doctors breached the duty of care owed to him, as established in various federal and state nursing home laws and regulations. For example, the doctors allegedly failed to take responsibility for Mr. Birl's medical treatment and improperly delegated such responsibility to nonphysician personnel at Heritage. After improperly delegating responsibility for determining the level of medical care, the Kaiser/SCPMG doctors also failed to supervise the care provided to Mr. Birl. The doctors also failed to inform Mr. Birl or his legal representative of his health status, and failed to participate in preparing and reviewing a care plan for Mr. Birl and in monitoring and revising such a plan.

Moreover, as alleged in the complaint, the Kaiser/SCPMG doctors knew that the State Department of Health Services had cited Heritage for serious

deficiencies in patient care in violation of various laws, and they knew that Mr. Birl showed signs of suffering from the same type of patient neglect for which Heritage had previously been cited. Nonetheless, the Kaiser/SCPMG doctors continued to fail to properly supervise Mr. Birl's care and failed to report the signs of such neglect to the appropriate government agency, as required by laws addressing elder abuse and neglect issues.

The first amended complaint, filed by Mr. Birl's wife and adult daughters, alleged 11 causes of action against Kaiser and its various entities and against the three residential nursing facilities, including Heritage. The three plaintiffs sued in three distinct capacities—on behalf of Mr. Birl as successors in interest, as persons having a statutory right to pursue a wrongful death action, and as individuals for breach of duties owed to them personally.

In their capacity as successors in interest, Mr. Birl's wife and daughters alleged elder abuse (first cause of action), willful misconduct (second cause of action), negligence (fourth cause of action), breach of contract (sixth cause of action), fraud (seventh cause of action), unfair business practices (eighth cause of action), and breach of statutory duties and resident's rights (ninth cause of action). In their capacity as persons entitled to sue for the wrongful death of another, Mr. Birl's wife and daughters alleged wrongful death (fifth cause of action) and pursued damages for their loss of Mr. Birl's love, companionship, affection, and society. In their individual capacities as plaintiffs to whom Heritage breached duties owed to them personally, Mr. Birl's wife alleged loss of consortium (10th cause of action), and his wife and daughters alleged the negligent infliction of emotional distress (11th cause of action).

Regarding the procedural status of the various defendants, neither the Brier Oak Terrace Care Center nor the Fountain View Subacute and Nursing Center had an arbitration agreement with Mr. Birl; those defendants filed answers to the complaint, and the action is proceeding to a jury trial. The Kaiser/SCPMG defendants filed a petition to compel arbitration, which the trial court denied, and they have not appealed that order. They filed an answer to the complaint, and the action apparently will proceed to a jury trial.

Heritage filed a petition to compel arbitration, but only as to some of the causes of action alleged. Heritage did not move to compel arbitration as to the claims for wrongful death (fifth cause of action) and breach of statutory duties and resident's rights (ninth cause of action). Those causes of action apparently will proceed to trial regardless of the outcome of the present appeal.

However, Heritage did petition the court to order arbitration on the following causes of action, which are the subject of the present appeal: the

successor in interest claims of elder abuse (first cause of action), willful misconduct (second cause of action), negligence (fourth cause of action), breach of contract (sixth cause of action), fraud (seventh cause of action), and unfair business practices (eighth cause of action), as well as the individual claims for loss of consortium (10th cause of action), and negligent infliction of emotional distress (11th cause of action).

After a hearing on February 13, 2008, the trial court denied Heritage's petition to compel arbitration. The arbitration agreement had been signed on May 15, 2006, by Mr. Birl's wife, who wrote after her signature "POA" (indicating power of attorney) and above a line stating she was the "Resident's Representative/Agent." The trial court denied the petition to compel arbitration on two separate grounds. First, the court exercised its discretion under section 1281.2, subdivision (c), and refused to enforce the arbitration agreement to avoid the possibility of conflicting rulings on common issues of law or fact. Second, the court determined that Heritage's arbitration agreement did not conform to certain legal requirements regarding the language, format, and font, as required by Health and Safety Code section 1599.81, and as implemented by California Code of Regulations, title 22, section 72516, subdivision (d).

Heritage appeals.

## DISCUSSION

I. *Appealability and the standard of review.*

An order denying a petition to compel arbitration is appealable. (§ 1294, subd. (a).) An order denying arbitration is generally reviewed for abuse of discretion. (See *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484 [17 Cal.Rptr.3d 88].) The de novo standard of review applies only where the trial court's denial of a petition to arbitrate presents a pure question of law. (See *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547].)

Here, the proper interpretation and application of section 1281.2, subdivision (c), is a legal question reviewed de novo. (*Whaley v. Sony Computer Entertainment America, Inc., supra,* 121 Cal.App.4th at p. 484; see *One World Networks Integrated Technologies, Inc. v. Duitch* (2002) 103 Cal.App.4th 1038, 1044 [127 Cal.Rptr.2d 843] [trial court's discretion does not permit it to misapply a statute as a matter of law].) If the statute is properly invoked, then we review under the abuse of discretion standard the trial court's decision to refuse to compel arbitration under section 1281.2, subdivision (c). (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101 [284 Cal.Rptr. 255].)

■ As discussed below, contrary to Heritage's contention, the third party requirement in section 1281.2, subdivision (c), was satisfied as a matter of law, and the trial court did not abuse its broad discretion in refusing to compel arbitration on the basis that there was a possibility of conflicting rulings on a common issue of law or fact.

II. *Heritage has failed to establish that the trial court abused its broad discretion by refusing to enforce the arbitration agreement to avoid the possibility of conflicting rulings on a common issue of law or fact.*

■ The issue in this case involves the application of section 1281.2, subdivision (c). That statute provides that when there is a written arbitration agreement, the trial court shall order the parties to arbitrate the controversy unless it determines, in pertinent part, as follows: "A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Thus, for Heritage to meet its burden of establishing that the court abused its discretion, it must show that none of the other parties to the action are "third parties" to a pending court action arising out of "the same transaction or series of related transactions" in which there is "a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).)

A. *The Kaiser/SCPMG defendants, who are admittedly third parties to the arbitration agreement with Heritage, satisfy the other prerequisites for applying section 1281.2, subdivision (c).*

Heritage acknowledges that the Kaiser/SCPMG defendants and the two other residential care facility defendants (the Brier Oak Terrace Care Center and the Fountain View Subacute and Nursing Center) are third parties. However, Heritage asserts that other aspects of the statute are not satisfied, and thus that the third party requirement was not met. We find otherwise.

*The Kaiser/SCPMG defendants were involved in the same transaction as that involving Heritage.*

A significant factual scenario alleged in the action against the Kaiser/SCPMG defendants arose out of the same transaction that involved Heritage. Heritage essentially ignores the significance of the allegations that not only did Kaiser prematurely discharge Mr. Birl to Heritage, but that Kaiser/SCPMG doctors—who were Mr. Birl's attending physicians at Heritage—failed to provide necessary care and services to Mr. Birl at Heritage. Thus, the Kaiser/SCPMG doctors directly contributed to the injuries suffered by Mr. Birl at Heritage.

 It is uncontested that each patient at a nursing home facility must be "under the continuing supervision of a physician" (Cal. Code Regs., tit. 22, § 72307, subd. (a)), with "supervision" by the physician "mean[ing] to instruct an employee or subordinate in their duties and to oversee or direct work, but . . . not necessarily requir[ing] the immediate presence of the supervisor." (Cal. Code Regs., tit. 22, § 72113, subd. (a).) Also, the patient's attending physician is "responsible for the medical treatment of the patient in the facility." (*Id.*, § 72085, subd. (b).) Significantly, the attending physician is statutorily required to be part of an interdisciplinary team, along with the nursing home staff, that oversees the care of the patients using a "team approach" in assessing and planning the care of the resident patient. (Health & Saf. Code, § 1418.81, subd. (c).)

As alleged in the complaint, the Kaiser/SCPMG doctors, who were Mr. Birl's attending physicians at Heritage, breached the duties owed to Mr. Birl while he was under their care at Heritage. Specifically, the complaint alleged that the Kaiser/SCPMG doctors knew that the State Department of Health Services had cited Heritage for deficiencies in patient care, which violated federal or state laws, and knew that Mr. Birl showed signs of suffering from the same type of patient neglect for which Heritage had previously been cited. Nevertheless, Kaiser/SCPMG doctors continued to fail to supervise Mr. Birl's care, and they failed to report to appropriate governmental agencies the signs of patient neglect exhibited by Mr. Birl's deteriorating condition. (See Welf. & Inst. Code, §§ 15630, 15610.17.)

Thus, in view of the above factual allegations, the trial court was well within its discretion in finding that the action filed against the Kaiser/SCPMG defendants arose out of the same transaction as that involving defendant Heritage.

*All the codefendants were involved in "a series of related transactions" that also involved defendant Heritage.*

As alleged in the complaint, the tortious conduct of the other two residential nursing facility defendants, the Kaiser/SCPMG defendants, and defendant Heritage, all contributed to the injuries suffered by Mr. Birl prior to his death. It is of no consequence that Heritage's services were separated by time from the sequential services provided by the other long-term care facilities. A *temporal separation does not necessarily negate the existence of the requisite* "series of related transactions." (§ 1281.2, subd. (c).) Likewise, all the codefendants contributed to the cause of the injuries suffered by Mr. Birl's wife and two daughters, as alleged in their individual causes of action for loss of consortium and the negligent infliction of emotional distress.

*If the trial court did not join all the defendants in the court action, there is a "possibility" of conflicting rulings on common issues of law or fact.*

The trial court properly noted the possibility of conflicting rulings on common issues of law or fact if defendant Heritage was not joined in the court action with the other defendants. A myriad of conflicting rulings is possible. For example, Heritage asserted as an affirmative defense that various third party health care providers, who are not defendants in the present case, caused the injuries suffered by Mr. Birl at Heritage. Different triers of fact in different proceedings could come to different and conflicting conclusions as to which party or parties were liable, and also could arrive at different conclusions in apportioning the amount of damages. However, if the trier of fact is the same for all defendants, as would occur if all defendants are joined in the court action, then the possibility of conflicting rulings concerning fault and apportionment of damages (see Civ. Code, § 1430 et seq.) would not occur.[3]

 B. *Plaintiffs themselves are also third parties to the arbitration agreement with Heritage, as to causes of action brought in plaintiffs' individual capacities, within the meaning of section 1281.2, subdivision (c).*

According to Heritage, because Mr. Birl's wife and daughters are successors in interest, they merely "step into" decedent's position in the action as a party to the arbitration (see §§ 377.11, 377.30; *Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 905–906 [72 Cal.Rptr.3d 409]), and thus they are not third parties. But, Heritage fails to give sufficient consideration to the fact that plaintiffs assert claims in more than one capacity. Plaintiffs assert claims not just as successors in interest, but also individually and as surviving heirs.

Plaintiffs' claim for wrongful death (the fifth cause of action) was not brought as Mr. Birl's successors in interest, but rather was brought as persons statutorily authorized to assert a wrongful death cause of action in their own right. (See § 377.60.) Indeed, Heritage did not even petition the trial court to compel arbitration as to the fifth cause of action for wrongful death.

---

[3] We note that it is even possible that if all defendants are not before the same trier of fact, apportionment of liability could result in liability by more than one defendant but nonetheless no monetary recovery for plaintiffs. This could occur in a scenario where, for example, an arbitrator places 100 percent of the blame on the Kaiser/SCPMG defendants and none on Heritage, while a jury (which is not bound by the findings of an arbitrator) places 100 percent of the blame on Heritage and none on the Kaiser/SCPMG defendants. The trial court's ruling denying Heritage's petition to compel arbitration eliminates the possibility of such a conflicting and unjust outcome.

Similarly, plaintiffs did not "step into the shoes" of Mr. Birl in pursuing their own personal injury claims for negligent infliction of emotional distress (the 11th cause of action). The causes of action for wrongful death and emotional distress were brought by plaintiffs in their individual capacities.

■　There are significant consequences and distinctions that flow from the particular legal capacity in which a party sues. For example, in *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358], the court held that the president of a company who signed an agreement on behalf of a company as president was not bound by an arbitration clause when he subsequently brought an action in his individual capacity. *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256 [45 Cal.Rptr.3d 222], is also instructive. There, the court held that a wife who filed a wrongful death action could not amend the complaint to allege a survivor cause of action after the statute of limitations had run because the untimely survivor action did not relate back to the heir's wrongful death action. The wrongful death action was a totally new right of action, on different legal principles, and the cause of action for wrongful death did not belong to the decedent, but belonged to the persons specified by statute. (*Id.* at pp. 1263–1265.)

Thus, plaintiffs qualify as third parties within the meaning of section 1281.2, subdivision (c), as to the causes of action alleged for wrongful death and emotional distress. Second, plaintiffs' claims for wrongful death arose out of the same transaction or series of transactions involved in the injury causes of action that survived Mr. Birl's death and were pled against Heritage. The failure of Heritage to provide Mr. Birl with needed care and services not only allegedly caused him to endure needless pain and suffering, but also eventually led to his wrongful death.

Finally, the third component of the statute is also satisfied because there is a possibility of conflicting rulings on a common issue of law or fact. For example, different triers of fact could reach different conclusions as to which party was at fault, the cause of any injuries, and the apportionment of liability—unless all the parties are joined in one action.

### C.　Conclusion.

Because the criteria set forth in section 1281.2, subdivision (c), were satisfied, the trial court did not misapply the law or abuse its broad discretion in denying the motion to compel arbitration.

## **DISPOSITION**

The judgment is affirmed.

Ashmann-Gerst, J., and Chavez, J., concurred.