Filed 6/10/13  Shaoxing City Maolong Wuzhong Down Products v. Keehn CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHAOXING CITY MAOLONG WUZHONG DOWN PRODUCTS et al, <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> L. SCOTT KEEHN et al., <br><br> Defendants and Respondents; <br><br> IAN S. LANDSBERG et al., <br><br> Defendants and Appellants. | B238360 <br><br> (Los Angeles County <br> Super. Ct. No. BC455229) |

APPEAL from an order of the Superior Court of Los Angeles County.  James R. Dunn, Judge.  Affirmed.

Gordon & Rees, Peter Schwartz, Gary Collis and A. Louis Dorny for Defendants and Appellants Ian S. Landsberg and Landsberg & Associates.

Keehn Law Group and L. Scott Keehn for Defendants and Respondents L. Scott Keehn and Keehn & Associates.

Timothy D. McGonigle, Timothy D. McGonigle and Robert A. Brock for Plaintiffs and Respondents Shaoxing City Maolong Wuzhong Down Products Co. and Shui Yan Cheng.

* * * * * *

Plaintiffs and respondents Shaoxing City Maolong Wuzhong Down Products Ltd. and Shui Yan Cheng (Cheng plaintiffs) filed a complaint alleging legal malpractice against defendants Ian S. Landsberg and Landsberg Margulies LLP, and defendants and respondents L. Scott Keehn and Keehn & Associates (Keehn defendants). Appellants Ian S. Landsberg and Landsberg & Associates brought a petition to compel arbitration, relying on an arbitration provision in their fee agreement with the Cheng plaintiffs. The trial court denied the petition. It ruled that Code of Civil Procedure section 1281.2, subdivision (c) applied to preclude arbitration, as a party to the arbitration agreement was also a party to pending litigation with a third party, which arose out of a series of related transactions, and there was a possibility of conflicting rulings on common issues of law or fact.

We affirm. The trial court properly ruled that the Keehn defendants were a "third party" within the meaning of the statute, even though they had a separate arbitration agreement with the Cheng plaintiffs. Moreover, the trial court properly concluded the other statutory requirements were satisfied and acted within its discretion in denying the petition to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Shui Yan Cheng was a corporate director and shareholder of Aelous. The Cheng plaintiffs obtained a $5.35 million arbitration award against Aelous and two of its other shareholders, which was confirmed as a judgment in March 2009. After the Cheng plaintiffs undertook efforts to execute on the judgment, Aelous and the shareholders filed Chapter 11 bankruptcy petitions.

The Cheng plaintiffs retained the Keehn defendants in July 2009 to represent their interests in the bankruptcy proceedings. The engagement letter included an arbitration agreement, which provided in part that "any controversy concerning the attorneys' fees incurred in this Engagement, or any other claim arising out of, or related to, this, or any subsequent engagement of the Firm shall be settled by binding arbitration." The provision also required the arbitration to be conducted in San Diego County, directed that the JAMS Arbitration Rules and Procedures would apply and permitted review of the

arbitrator's decision by the Fourth District Court of Appeal to the same extent as any superior court judgment.

Approximately five months later, on November 16, 2009, the Cheng plaintiffs entered into a fee agreement with Landsberg & Associates (sometimes Landsberg agreement), also involving representation in the bankruptcy action. Ian S. Landsberg (Landsberg) signed the agreement as the firm's partner. It included an arbitration provision, requiring that any claims arising out of the agreement be submitted to final and binding arbitration. In relevant part, the Landsberg agreement provided: "It is understood and agreed that any claim arising out of the rendition or lack of rendition of services under this Agreement (including claims of legal malpractice) will be determined by submission to final and binding arbitration, and not by a lawsuit or resort to court process except as provided by law for judicial review or enforcement of arbitration proceedings. This includes any claim that any legal services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered. At the sole option of the Client this arbitration agreement may also include any dispute over legal fees as provided in Sections 6200–6206 of the Business and Professions Code of the State of California." The Landsberg agreement also provided that the parties were giving up their right to a jury trial, California law governed and the proceedings would be administered by the American Arbitration Association's Los Angeles office.

Three days later, the Cheng plaintiffs filed a substitution of attorney, which substituted Landsberg of Landsberg Margulies LLP in the place of the Keehn defendants. Landsberg represented the Cheng plaintiffs for approximately four months.

In February 2011, the Cheng plaintiffs filed a complaint for legal malpractice against the Keehn defendants, Landsberg Margulies LLP and Landsberg. Without distinguishing the conduct engaged in by any specific defendant, they alleged that all defendants acted negligently in a number of respects and that such negligence caused them to suffer damages. Notwithstanding their agreement to arbitrate, the Keehn

3

defendants proceeded to litigate the matter, filing an answer to the complaint, exchanging discovery, and meeting and conferring regarding inadequate discovery responses.

In August 2011, appellants filed a petition to compel arbitration, relying on the arbitration provision in the Landsberg agreement. In a declaration, Landsberg further averred that the reference to Landsberg Margulies in the substitution of attorney was a typographical error, as he had ended his association with that firm as of November 1, 2009.

The Cheng plaintiffs opposed the petition, arguing that permitting the arbitration to go forward could lead to inconsistent results with the ongoing litigation and that petitioner Landsberg & Associates was not a party to the action. The Keehn defendants also opposed the petition. They relied on Code of Civil Procedure section 1281.2, subdivision (c), which provides that an order to arbitrate is not appropriate where: "A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."[1]

At an initial hearing in October 2011, the trial court's tentative decision was to deny the petition, reasoning that compelling arbitration created "the potential here of inconsistent verdicts, both in terms of liability and in terms of the total amount of damages, as well as the potential allocation between them." Ultimately, it permitted the parties to file supplemental briefs to address the application of section 1281.2, subdivision (c) to the circumstances alleged and in consideration of the additional fact—disclosed to appellants at the hearing—that the Keehn defendants had entered into an arbitration agreement they had elected not to enforce.

All parties filed supplemental briefs. At a subsequent hearing, the trial court affirmed its tentative ruling. It found the case unusual in that "what is tantamount to one

---

[1]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

party's waiver of their right to enforce an arbitration agreement has put the case in the posture where, because of the unique facts in this case, and the potential for inconsistent verdicts, it robs the Landsberg defendants' right to arbitrate under the agreement." Nonetheless, it concluded that it did "not have the power to force the Keehn defendants to arbitrate under the Landsberg agreement, nor do they have the power to force them to arbitrate under their own agreement." Accordingly, it entered an order denying appellants' petition to compel arbitration. This appeal followed.

## DISCUSSION

Appellants maintain the trial court erred in denying their petition to compel arbitration, arguing that the Keehn defendants were not a "third party" within the meaning of section 1281.2, subdivision (c) and therefore the exception was inapplicable.[2] They contend that the Keehn defendants cannot be a third party because they had a separate agreement to arbitrate. We find no merit to appellants' contention.

**I.      Governing Legal Principles Concerning Petitions to Compel Arbitration and the Standard of Review.**

"California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes. [Citation.] To further that policy, section 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies. [Citation.] Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration

---

**2**      Appellants separately argue that they were the proper parties to bring the petition to compel arbitration notwithstanding that Landsberg & Associates was not named in the complaint. Below, the trial court appeared to be satisfied by appellants' representation that the firm of Landsberg Margulies was dissolved and, in any event, should not have appeared on the substitution of counsel given that appellants were the parties to the Landsberg agreement. Because the trial court did not premise its order denying the petition on whether appellants were the proper moving parties and the Cheng plaintiffs have not raised the issue, we, too, are satisfied that appellants are the proper parties to have filed the petition to compel arbitration. (See § 1281.2 ["party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy" may petition to compel arbitration].)

5

agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues. (§ 1281.2, subds. (a)–(c).)" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967 (*Acquire II*).)

The *Acquire II* court described the statutory elements necessary to satisfy the final exception: "The third party litigation exception applies when (1) '[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party . . .'; (2) the third party action 'aris[es] out of the same transaction or series of related transactions'; and (3) 'there is a possibility of conflicting rulings on a common issue of law or fact.' (§ 1281.2(c).) If all three of these conditions are satisfied, then section 1281.2(c) grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute. [Citation.] Specifically, section 1281.2 identifies four options from which the court may choose: (1) 'refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding'; (2) 'order intervention or joinder as to all or only certain issues'; (3) 'order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding'; and (4) 'stay arbitration pending the outcome of the court action or special proceeding.' (§ 1281.2.)" (*Acquire II, supra,* 213 Cal.App.4th at pp. 967–968.)

Accordingly, "[s]ection 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement," and it gives "the court discretion not to enforce the arbitration agreement under such circumstances—in order to avoid potential inconsistency in outcome as well as duplication of effort . . . ." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.) The Legislature included section 1281.2, subdivision (c) as part of the statutory scheme governing arbitration "so that common issues of fact and law will be resolved consistently, and only once." (*Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 727.)

6

As a threshold matter, we review the trial court's interpretation of section 1281.2, subdivision (c) de novo. (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1283.) "Specifically, whether a defendant is in fact a third party for purposes of [section 1281.2, subd. (c)] is a matter of law subject to de novo review." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.) Once section 1281.2 has been found to apply, "'the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse.' [Citations.]" (*Acquire II, supra,* 213 Cal.App.4th at pp. 971–972; accord, *Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1318.) Under this deferential standard of review, "the trial court's order will not be disturbed on appeal unless it exceeds the bounds of reason." (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101.)

## II. The Trial Court Properly Determined That the Keehn Defendants Were a Third Party Within the Meaning of Section 1281.2, Subdivision (c).

The trial court concluded this was a matter that fit within the parameters of section 1281.2, subdivision (c). It necessarily determined that the Keehn defendants were a "third party" within the meaning of the statute. In *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479 (*Whaley*), the court held that section 1281.2, subdivision (c) applied to employees who brought an action against their former employer and its vice-president, because those defendants were already in litigation with other former employees that involved related transactions and raised common issues of law and fact. (*Whaley, supra*, at p. 485.) The appellate court rejected the employer's argument that the exception was intended to apply only for the benefit of one who is both a party to an arbitration agreement and a party to the related litigation with a third party. (*Id.* at pp. 484–485.)

Applying well-established rules of statutory interpretation, the *Whaley* court reasoned that the employer's construction of the statute was contrary to its plain language: Section 1281.2, subdivision (c) "contains no provision stating that it may be invoked only in favor of the party caught 'in the middle' between arbitration and litigation. The statute is unambiguous: it allows the trial court to deny a motion to

7

compel arbitration whenever 'a party' to the arbitration agreement is also 'a party' to litigation with a third party that (1) arises out of the same transaction or series of related transactions, and (2) presents a possibility of conflicting rulings on a common issue of law or fact. As the trial court concluded, [the employer] is 'a party' to the arbitration agreements and is also 'a party' to litigation with a third party [employee] that satisfies the other conditions set forth in the statute. Thus, the trial court had discretion to refuse to compel arbitration in order to avoid the possibility of conflicting rulings. [Citations.]" (*Whaley, supra,* 121 Cal.App.4th at p. 486.) The court further noted that the Legislature easily could have included the qualifying language that the employer sought to infer, and its failure to do so precluded the court from construing the statute to include limitations that the Legislature did not. (*Ibid*.)

Relevant here, the provision's requirement that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party" is likewise unambiguous. (§ 1281.2, subd. (c).) "As used in section 1281.2, subdivision (c), the term 'third party' means a party to the action that is not bound by or entitled to enforce the arbitration agreement. [Citations.]" (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612; *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1519 ["The term 'third party' for purposes of section 1281.2, must be construed to mean a party that is not bound by the arbitration agreement"].) Here, it was undisputed that the Keehn defendants were not a party to the Landsberg agreement and therefore had no ability to enforce it. The trial court properly ruled they were a "third party" within the meaning of the exception.

Appellants claim the fact that the Keehn defendants entered into a separate arbitration agreement with the Cheng plaintiffs renders them ineligible for third-party status. They rely on a series of cases holding that a third party does not include a defendant who can compel arbitration of the claims against it. But in each of those cases, the "third party" had some relationship to the contract containing the arbitration agreement requiring that it be bound by the agreement or permitted to enforce the agreement. None of the cases involved the circumstances here, where the third party was

8

also a party to a completely separate agreement also providing for arbitration. (See *Thomas v. Westlake, supra,* 204 Cal.App.4th at pp. 614–615 [a defendant's agent is not a third party because "a plaintiff's allegations of an agency relationship among defendants is sufficient to allow the alleged agents to invoke the benefit of an arbitration agreement executed by their principal even though the agents are not parties to the agreement"]; *Laswell v. AG Seal Beach, LLC, supra,* 189 Cal.App.4th at pp. 1407–1408 [defendants who owned and managed a health care facility were not third parties because there was a sufficient identity of parties to bind them to the arbitration agreement]; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 714, 715 [a defendant is not a third party under the doctrine of equitable estoppel where the "'plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant'" and such claims are "'dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause'"]; *RN Solution, Inc. v. Catholic Healthcare West, supra,* 165 Cal.App.4th at p. 1520 [nonsignatory to arbitration agreement was not a third party because she could be bound by the agreement both as an agent-employee of the signatory and as a third party beneficiary of the contract containing the arbitration provision]; *Rowe v. Exline, supra,* 153 Cal.App.4th at pp. 1284–1285 [nonsignatory to arbitration agreement sued as an alter ego of a signatory entitled to enforce arbitration agreement and is therefore not a third party under § 1281.2, subd. (c)].)

Notwithstanding that case law uniformly holds the term "third party" unambiguously means a party to the action who is neither bound by nor entitled to enforce the arbitration agreement, appellants maintain that the term is ambiguous, therefore requiring us to examine legislative history. We agree with the *Whaley* court that "[e]ven if we were to consider the legislative history of the statute, however, we would still find no latent ambiguity suggesting another possible meaning of the statutory language." (*Whaley, supra*, 121 Cal.App.4th at p. 487.)

According to appellants, any reliance on *Whaley* is misplaced because the appellate court misquoted the pertinent legislative history. The *Whaley* court cited the

9

Senate Committee on the Judiciary's analysis of the bill to examine legislative intent, stating: "The legislative history broadly defines the problem the Legislature intended to address as follows: 'In actions involving multiple parties with related claims, where some claimants agree to arbitrate their differences and others remain outside the agreement, *arbitration is unworkable.* Where a party to an arbitration agreement is also party to a pending court action or special proceeding, with such a third party, *there may be a possibility of conflicting rulings on issues of law or fact.*' (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1997–1998 Reg. Sess. [*sic*]) p. 2, italics added.) Thus, the statute was intended primarily to prevent conflicting rulings resulting from arbitration proceedings and other related litigation arising out of the same transaction." (*Whaley, supra,* 121 Cal.App.4th at p. 488, underline added.) The Senate Committee analysis actually used the word "any" instead of the word "the," and subsequent legislative analyses accurately quoted the Senate Committee report including the word "any."[3] (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1977–1978 Reg. Sess.) p. 2; Sen. Policy Comm. Materials, Correspondence from Legislative Representative of the State Bar of Cal. re Sen. Bill No. 1628, May 23, 1978, p. 1; Sen. Policy Comm. Materials, Correspondence from Legislative Representative of the State Bar of Cal. re Sen. Bill No. 1628, March 30, 1978, p. 1.)

Appellants contend that the Senate Committee's use of the word "any" is significant and suggests that the statutory exception was intended to apply only when "others remain outside any agreement," meaning that the fact the Keehn defendants were parties to a separate arbitration agreement rendered the exception inapplicable. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1977–1978 Reg. Sess.) p. 2.) We discern no such meaning from the committee's isolated use of the word "any." Courts have cautioned "to rely on legislative history only when that history itself is unambiguous." (*J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th

---

[3]     We granted appellants' request to take judicial notice of portions of the legislative history of Senate Bill No. 1628.

10

1568, 1578; accord, *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 337; *Medical Bd. v. Superior Court* (2003) 111 Cal.App.4th 163, 179.) In other portions of the analysis, the Senate Committee stated that the bill applied "[w]here a party to *an* arbitration agreement is also a party to a pending court action" and allowed a court to "refuse to enforce *the* arbitration agreement" or "stay *the* arbitration agreement pending resolution of the court action . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1977–1978 Reg. Sess.) pp. 1–3, italics added.) Though we recognize that the Legislature is sensitive "to language and the definitional nuances which may be associated with its use of different words" (*People v. Quillar* (1989) 214 Cal.App.3d 1458, 1461), nothing in the legislative history indicates that the Legislature intended to convey different meanings through its alternating use of the modifiers "any," "the" and "an." We conclude "the differences are linguistic only" (*ibid*.) and the Senate Committee's isolated use of the word "any" does not reflect legislative intent to prohibit the use of the exception where a third party has a separate arbitration agreement but is not bound by or able to enforce the arbitration agreement which is the basis for the petition to compel arbitration.

Nor are we persuaded that the Legislature's simultaneous enactment of section 1281.3 as part of Senate Bill No. 1628 demonstrated an intent to exclude from the reach of section 1281.2, subdivision (c) third parties who have a separate arbitration agreement. As explained in *Parker v. McCaw* (2005) 125 Cal.App.4th 1494, 1505: "Section 1281.3 permits consolidation of separate arbitration proceedings under certain circumstances: 'A party to an arbitration agreement may petition the court to consolidate separate arbitration proceedings, and the court may order consolidation of separate arbitration proceedings when: . . . (2) The disputes arise from the same transactions or series of related transactions; and [¶] (3) There is common issue or issue of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators.' In the event that the arbitration agreements 'contain inconsistent provisions, the court shall resolve such conflicts and determine the rights and duties of the various parties to achieve substantial justice under the circumstances.' [Citation.]" Appellants

11

argue that sections 1281.2 and 1281.3 should be harmonized so that the former statute applies to a third party who does not have a separate arbitration agreement while the latter applies to a third party who is a party to another arbitration agreement.

Appellants' interpretation is unsupported by either the statutory language or legislative history. Nothing in the language of either section 1281.2 or section 1281.3 indicates that the Legislature intended to limit the definition of a "third party" to one without an independent arbitration agreement. In any event, section 1281.3 assumes the existence of "arbitration proceedings," and thus does not encompass the situation here where parties to an arbitration agreement proceed to litigate. In addition, the legislative history demonstrates that the two provisions were designed to address distinctly different circumstances. Section 1281.2 was intended to give the trial court four options to deal with actions involving multiple parties where a party to an arbitration agreement is also a party to a pending court action with a third party. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1977–1978 Reg. Sess.) p. 2.) On the other hand, the intent of section 1281.3 was to provide a mechanism to consolidate separate arbitration proceedings: "The purpose of this change is to prevent inconsistent rulings where multiple parties involved in the same dispute have all agreed to arbitrate, but in separate proceedings." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1977–1978 Reg. Sess.) p. 3.) The legislative history focused on providing a means for trial courts to deal with two unrelated scenarios—one in which a party to an arbitration agreement is also in litigation with a third party involving a related matter and the other where there are separate but related arbitration proceedings. (*Id.* at p. 1 ["The purpose of the bill is to improve procedural aspects of arbitration in civil disputes"].) Nothing in the Senate Committee analysis supports the interpretation advocated by appellants that section 1281.3, and not section 1281.2, subdivision (c), must apply because the Cheng

12

plaintiffs and the Keehn defendants were parties to an arbitration agreement they elected not to enforce.[4]

## III. The Trial Court Properly Determined the Remaining Requirements of Section 1281.2, Subdivision (c) Were Met and Acted Within Its Discretion in Denying the Petition to Compel Arbitration.

Once the trial court makes the threshold determination that there is a third party involved in litigation with one of the parties to the arbitration agreement, its exercise of discretion comes into play. (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1288, fn. 6.) "If the prerequisites of the exception exist in a particular case, i.e., there are third parties not subject to arbitration on claims arising out of the same transaction or related transactions, and a possibility of conflicting rulings on common issues of law or fact, then the trial court has discretion to deny or stay arbitration. [Citation.]" (*Laswell v. AG Seal Beach, LLC, supra*, 189 Cal.App.4th at p. 1405.)

Though appellants address only whether the first prerequisite was satisfied, we briefly turn to the remaining two—whether the litigation "aris[es] out of the same transaction or series of related transactions" and that "there is a possibility of conflicting rulings on a common issue of law or fact" in connection with the controversy sought to be arbitrated. (§ 1281.2, subd. (c).) In evaluating whether the legal malpractice claims the Cheng plaintiffs filed against appellants and the Keehn defendants arose out of the same transaction or a series of transactions related to those appellants sought to arbitrate, we may consider the factual allegations of the complaint. (See *Lindemann v. Hume*

---

[4]    Though appellants appear to rely on section 1281.3 for purposes of statutory interpretation only, we note that they did not seek consolidation under this provision below. Even assuming they now sought application of the statute, the material differences in the two arbitration agreements—particularly the provision in the Landsberg agreement that arbitration is final and binding as compared to the provision in the Keehn defendants' arbitration agreement permitting appellate review—show that consolidation would not achieve substantial justice in this case. (See *Parker v. McCaw, supra,* 125 Cal.App.4th at p. 1505 ["Court-ordered consolidation does not achieve substantial justice under the circumstances if it substantially alters a party's contractual rights, or it results in unfair prejudice"].)

(2012) 204 Cal.App.4th 556, 566-568; *Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1499; *Birl v. Heritage Care, LLC, supra,* 172 Cal.App.4th at pp. 1319–1320.)

According to the Cheng plaintiffs' complaint, both appellants and the Keehn defendants "negligently failed to exercise proper care, skill, and diligence in undertaking to perform legal services for Plaintiffs . . . ." In describing the specific acts of negligence, the Cheng plaintiffs did not distinguish among appellants and the Keehn defendants, alleging that all defendants' negligence included the failure to timely conduct discovery, obtain relevant discovery, competently challenge a lien and pursue its fraudulent nature and competently challenge a number of fraudulent transfers. As the trial court acknowledged, the Cheng plaintiffs' allegations involved a series of related transactions: "[W]hat we're talking about here is about a nine-month bankruptcy in which the claim is that there w[ere] some alleged acts of malpractice which were to the plaintiff's detriment. And nobody really has defined them, except in the complaint and in the complaint they name a page and a half of alleged defalcations, none of which are specifically identified with a particular defendant. So, based on the complaint, I have a lawsuit against two defendants claiming a bunch of acts, and nowhere does it define as to who did what to whom." As alleged in the complaint, the transactions involving appellants on the one hand and the Keehn defendants on the other were inextricably intertwined, and hence related.

Even if we were to go beyond the complaint, the only distinction among all defendants was temporal. The Cheng plaintiffs retained the Keehn defendants for approximately five months beginning in July 2009, and thereafter engaged appellants for approximately four months beginning in November 2009. As explained by the court in *Birl v. Heritage Care, LLC, supra,* 172 Cal.App.4th at page 1320, "[a] temporal separation does not necessarily negate the existence of the requisite 'series of related transactions'" involving a third party. Rather, sequential conduct among multiple defendants is sufficient to satisfy the statutory requirement. (See *Lindemann v. Hume, supra,* 204 Cal.App.4th at pp. 566–567 [series of related transactions shown by

14

allegations that the defendants acquired a home from its developer with knowledge of possible water intrusion problems, disclosed the problems as part of an unsuccessful sale of the property and ultimately resold the home without making such disclosures]; *Birl v. Heritage Care, LLC, supra,* at pp. 1319–1320 [series of related transactions shown by allegations that physicians and successive nursing homes failed to provide the plaintiff with necessary care and treatment].) Thus, the trial court properly concluded that the representation provided by appellants and the Keehn defendants involved a series of related transactions.

Likewise, the complaint's allegations showed the possibility of conflicting rulings on common issues of law or fact if appellants did not participate in the pending action and instead proceeded to arbitration. The trial court reasoned: "[I]t seems to me that if we've got an arbitrator trying to decide who is responsible for what, he's going to have to take a look at all the claimed actions that constitute malpractice. And in a trial, the judge is going to have to look at all the claimed allegations of malpractice to determine (A) whether there was any malpractice by the particular lawyer who is charged; and (B) whether there was any damage; and (C) if there was, whether it was the alleged malpractice attributed to that lawyer which resulted in the damage." The trial court concluded that the same determinations would necessarily be made in separate forums, thereby creating the possibility of conflicting rulings.

"'The existence of [a] possibility of conflicting rulings on a common issue of fact is sufficient grounds . . .' to deny a motion to compel pursuant to section 1281.2, subdivision (c). [Citation.]" (*Abaya v. Spanish Ranch I, L.P., supra,* 189 Cal.App.4th at p. 1499; accord, *Lindemann v. Hume, supra,* 204 Cal.App.4th at p. 567 [the relevant issue under § 1281.2, subd. (c) "is not whether inconsistent rulings are inevitable but whether they are possible if arbitration is ordered"].) As the trial court recognized, the possibility of conflicting rulings was apparent here. In their answer, the Keehn defendants asserted multiple affirmative defenses including no proximate cause, failure to mitigate, acts or omission of others, contributory negligence and superseding acts, each of which could involve a determination by the trier of fact regarding the existence and extent of

15

appellants' liability, including the amount of damage attributable to their conduct.  By the same token, an arbitrator to any controversy between appellants and the Cheng plaintiffs would also necessarily decide the existence and extent of appellants' liability and determine the resulting damage attributable to their conduct.  This was the classic situation where "[d]ifferent triers of fact in different proceedings could come to different and conflicting conclusions as to which party or parties were liable, and also could arrive at different conclusions in apportioning the amount of damages." (*Birl v. Heritage Care, LLC, supra,* 172 Cal.App.4th at p. 1321; see also *C. V. Starr & Co. v. Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637, 1642 [possibility of conflicting rulings supported denial of petition to compel arbitration brought by one insurance carrier in a pending action involving the allocation of a settlement amount among numerous insurance carriers].)

"'[S]ection 1281.2(c) is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration.  Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements . . . .'" (*Cronus Investments, Inc. v. Concierge Services, supra,* 35 Cal.4th at p. 393.)  The trial court properly determined that the statutory exception applied here.  Although appellants do not challenge the trial court's exercise of discretion in electing to deny the petition to compel arbitration rather than choosing one of the other available options under section 1281.2, the trial court was well within its discretion to refuse to enforce the arbitration provision in the Landsberg agreement.  (See *Birl v. Heritage Care, LLC, supra*, 172 Cal.App.4th at p. 1322 [finding trial court "did not misapply the law or abuse its broad discretion in denying the motion to compel arbitration" where conflicting rulings were possible]; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 475–476 [affirming trial court's exercise of discretion to deny petition to compel rather than stay arbitration].)

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

        FERNS

We concur:

_____, P. J.

    BOREN

_____, J.

    CHAVEZ

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.