[No. S166747. Oct. 29, 2009.]

ROBERT L. JOHNSON, as Cotrustee, etc., Plaintiff and Respondent, v.
KATHRYN A. GREENELSH, as Cotrustee, etc., Defendant and Appellant.

**COUNSEL**

Sandra Waite and David P. Weilbacher for Defendant and Appellant.

George ♦ Cyr, J. Keith George and Anne C. Cyr for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.**—Here we conclude that a challenge to a surviving spouse's mental capacity to transfer trust assets and appoint a successor trustee did not violate the no contest clause in a family trust. A proceeding contesting a settlor's mental competence to exercise rights under a trust does not amount to an attack on the trust itself, unless it seeks to thwart the estate plan established by the trust.

## BACKGROUND

Spouses Walter and Florence Warren created the Warren Family Trust in 1993. Walter, Florence, and their children William Warren and Kathryn A. Greenelsh (Greenelsh) were named cotrustees. Walter died in 1996. The terms of the trust called for the creation of three subtrusts: a survivor's trust, including Florence's interest in the community estate; a QTIP (qualified terminable interest property) trust, calculated to qualify for the federal estate tax marital deduction and minimize estate taxes; and a residual trust consisting of the balance of the trust estate. William Warren and Greenelsh were remainder beneficiaries, as was Florence's son by a previous marriage, Robert L. Johnson.

William died on July 17, 2003, leaving Florence and Greenelsh as the cotrustees. On July 22, 2003, Florence signed a document naming Johnson as her successor cotrustee. The trust provides for such an appointment if a trustee "becomes unable or unwilling to act as Trustee." Johnson executed an "Acceptance of Appointment" on August 30, 2003. On September 5, 2003, Florence signed a memorandum to the trustees declaring that she had exercised her right under the trust to withdraw all the property in the survivor's trust for distribution to herself. The memorandum was also signed by one Forrest Warren as special trustee.[1] On September 18, 2003, Florence executed a document by which she resigned as cotrustee and confirmed Johnson as her successor.

The trust includes a no contest clause, barring any distribution to a beneficiary who "seeks to obtain in any proceeding in any court or before any arbitrator an adjudication that this Trust or any of its provisions is void, or seeks otherwise to void, nullify, [or] set aside this Trust or any of its provisions, . . . or to change provisions which are clearly and unambiguously expressed herein, . . . or through other means endeavors to secure or take any part of the Trust Estate in any manner other than as set forth herein." In January 2005, Greenelsh filed an application under Probate Code section 21320 to determine whether a proposed petition to compel arbitration would violate the no contest clause.[2] Under the arbitration clause in the trust,

---

[1] The trust requires the special trustee to approve withdrawals from the survivor's trust. The record does not indicate how or when Forrest became a special trustee, or explain his family relationship.

[2] "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause." (Prob. Code, § 21320, subd. (a).) Further statutory references are to the Probate Code.

We note that in 2008, the Legislature enacted a thoroughgoing revision of the statutory scheme governing no contest clauses. Operative January 1, 2010, and applying to instruments that became irrevocable on or after January 1, 2001, the new scheme generally limits the

Greenelsh sought to resolve "various disputes . . . between petitioner and Robert Johnson regarding his erroneous claims of authority as a trustee or co-trustee of the Warren Family Trust." She also referred to "disputes as to whether or not Florence Warren made a withdrawal of trust assets to place them into her own personal ownership; cooperation in making decisions affecting the Warren Family Trust property; and other disputes . . . ."[3]

In her reply to Johnson's opposition, Greenelsh made it clear that her challenge to his authority as cotrustee was based on Florence's alleged lack of capacity. Greenelsh attached letters from two neurologists, one dated October 8, 2001, opining that Florence "is incompetent to handle her own affairs at this time," and one dated August 19, 2004, with an assessment of "[a]mnesic dementia, likely Alzheimer's disease, moderate in severity, in a pleasant, well-supported, 90-year old female, with evolving neurobehavioral disorder including hallucinosis and generalized anxiety disorder."

The court denied Greenelsh's application without prejudice. It noted that "[t]he petition relates to a mix of disputes that may or may not trigger the no contest clause. [¶] A dispute concerning Florence Warren's capacity to withdraw funds from the survivor's trust and appoint Robert Johnson as a successor trustee could be identified as a direct contest . . . . [¶] In any subsequent petition, Petitioner should clearly identify all claims and relief that is sought so that the court can make an informed determination of whether the no contest provision is triggered."

Greenelsh filed a second section 21320 application in June 2006. This time, she proposed to seek a declaratory judgment that she was sole trustee of the Warren Family Trust. She attached a power of attorney signed by Florence in 1995, naming Greenelsh and William Warren as successor attorneys-in-fact to her husband Walter, and a document entitled "Consent to Act as Co-Attorneys-in-Fact for Florence Warren" signed by Greenelsh and William on July 26, 2001. Greenelsh also relied on a trust provision stating that if a trustee is unable to participate in trust activities due to illness or disability, the

---

enforceability of no contest clauses to (1) direct contests brought without probable cause; (2) challenges to the transferor's ownership of property at the time of the transfer, if expressly included in the no contest clause; and (3) creditor's claims and actions based on them, if expressly included in the no contest clause. The provisions of section 21320 are discontinued. (Stats. 2008, ch. 174, § 2, adding § 21310 et seq.; see §§ 21311, subd. (a)(1)–(3), 21314; Recommendation on Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 359; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1264 (2007–2008 Reg. Sess.) as amended Mar. 24, 2008.)

[3] The trust's arbitration clause is a broad one, applicable to "[a]ny and all disputes" between trustees or beneficiaries, "concerning any property owned by any trust(s) or the operation of any trust created herein." The trust also authorizes the trustees to "commence or defend such litigation with respect to the Trust or any property of the Trust Estate as the Trustees may deem advisable."

other trustee or trustees "may act as Trustee and make any and all decisions regarding the Trust Estate as if he or she were the sole Trustee." Her proposed petition alleged that after Florence's incapacity and the deaths of Walter and William, Greenelsh was left as the sole trustee. Johnson responded that the proposed petition violated the no contest clause by seeking to invalidate the provisions in the trust giving the surviving settlor the right to appoint a successor trustee.

The court agreed with Johnson and denied Greenelsh's application.[4] Nevertheless, in November 2006 Greenelsh served a notice of arbitration on Johnson, alleging disputes over a range of matters including Johnson's status as successor trustee and Florence's transfer of trust property into her personal ownership. Greenelsh claimed Florence lacked the capacity to take these steps. She also challenged various actions taken by Johnson with respect to trust property. Furthermore, she contended he should have no rights as a trust beneficiary, apparently on the ground that he had filed court proceedings in violation of the no contest clause. Johnson then sought to enforce the no contest clause against Greenelsh, arguing that she had violated the clause by initiating arbitration to set aside his appointment as cotrustee and Florence's withdrawal of survivor's trust assets. Johnson's petition did not raise any other claims in the arbitration demand as grounds for enforcing the no contest clause.

Greenelsh responded by withdrawing her notice of arbitration and arguing that Johnson's petition was therefore moot. She also contended that in any event, the arbitration notice did not violate the no contest clause because the proposed arbitration was consistent with the provisions of the trust. The trial court granted Johnson's petition.

The Court of Appeal affirmed, holding that "[t]he arbitration initiated by Greenelsh directly attacks provisions of the Trust in an attempt to change Walter and Florence's testamentary plan and, accordingly, directly contravenes the express language of the no contest clause." The court reasoned that Greenelsh had "sought to nullify the unambiguous right given to a settlor by the Trust agreement to appoint a successor trustee when he or she chooses, and to nullify the unambiguous right given to a surviving settlor to transfer assets in the survivor's trust from the Trust to the survivor individually." She had also, according to the court, sought to " 'secure or take' " part of the trust estate in a manner contrary to the terms of the trust, as forbidden by the no contest clause.

---

[4] Johnson notes that Greenelsh failed to appeal from either of the trial court's rulings denying her section 21320 applications, but does not contend those rulings have any preclusive effect. We express no view on that subject.

Greenelsh argued that her arbitration petition did not meet the statutory definition of a "direct contest" because it did not allege "the invalidity of an instrument." (§ 21300, subd. (b).) Section 45 defines "instrument" as "a will, trust, deed, or other writing that designates a beneficiary or makes a donative transfer of property."

The Court of Appeal disagreed. It did not, however, explain how the statutory definition of "direct contest" was met. Rather, it noted that a contest may also be indirect under section 21300, subdivision (c), and decided that "[e]ven if the documents appointing Johnson as trustee and withdrawing assets from the survivor's trust are not considered 'instruments,' the arbitration initiated by Greenelsh necessarily includes a challenge to the provisions of the Trust agreement pertaining to those subjects." The court rejected Greenelsh's other arguments, including her claims that the arbitration demand merely sought to clarify ambiguous trust terms,[5] was a challenge to the exercise of fiduciary power supported by public policy, and was consistent with the terms of the trust and her duties as a trustee.

We granted Greenelsh's petition for review. In this court, Greenelsh primarily contends that (1) her challenge to Florence's competency was not a "contest" under the statutory definition of "direct contest" or the case law governing indirect contests; and (2) her request for arbitration did not violate the no contest clause because it sought only to resolve ambiguities in the trust provisions. We agree that the arbitration demand did not amount to a "contest," and thus we need not address Greenelsh's other claims.

Johnson not only renews the arguments that succeeded in the Court of Appeal, but also raises another justification for the trial court's ruling: he asserts that the allegations in Greenelsh's arbitration demand seeking to disinherit him violated the no contest clause. Johnson did not present this argument in the trial court or in his briefing before the Court of Appeal. "[N]o reason appears why we should not apply the established rules that a party to an action may not, for the first time on appeal, change the theory of the cause of action [citations] and that issues not raised in the trial court cannot be raised for the first time on appeal. [Citations.]" (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517], fn. omitted; see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [82 Cal.Rptr.3d 229, 190 P.3d 586].)[6]

---

[5] The no contest clause exempts "a petition made in good faith seeking an interpretation or construction of an ambiguous provision of this instrument."

[6] Johnson's counsel informs us that in oral argument before the Court of Appeal, he urged the court to consider Greenelsh's attempt to disinherit his client as a ground for finding that the no contest clause was violated. The court chose not to address this point, and it played no part in our grant of review.

## DISCUSSION

■ There is no conflict or question of credibility in the relevant extrinsic evidence. Accordingly, interpretation of the trust is a question of law for our independent review. (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92] (*Burch*).) Although no contest clauses are enforceable and favored by the public policies of discouraging litigation and preserving the transferor's intent, they are nevertheless strictly construed and may not be extended beyond their plainly intended function. (*Ibid.*; §§ 21303, 21304.) " 'Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.]" (*Burch*, at pp. 254–255.)

Here, the Court of Appeal overstated the effect of Greenelsh's challenge to Florence's mental capacity. Greenelsh did not propose to "void, nullify, [or] set aside [the] Trust or any of its provisions," or to "change provisions which are clearly and unambiguously expressed," as specified in the no contest clause.[7] She sought no revision of trust terms, and made no claim that the trust did not authorize Florence to appoint a successor trustee or withdraw assets from the survivor's trust. Greenelsh asserted only that Florence had become incompetent to perform those actions, so that the appointment and withdrawal in 2003 were ineffective. The trust provisions governing appointment of trustees and withdrawal of assets would themselves remain unchanged and in full effect whether or not Greenelsh succeeded in her challenge. Were Florence to be found incompetent, her powers of appointment and withdrawal could be exercised on her behalf by her legal representative or representatives. Nothing in the no contest clause indicates it was intended to apply to proceedings to determine a settlor's mental capacity to exercise rights conferred by the trust document.

---

[7] The clause provides, in relevant part: "In the event that any beneficiary under this Trust or any amendments thereto . . . seeks to obtain in any proceeding in any court or before any arbitrator an adjudication that this Trust or any of its provisions is void, or seeks otherwise to void, nullify, [or] set aside this Trust or any of its provisions, including amendments hereto, or to change provisions which are clearly and unambiguously expressed herein, . . . or through other means endeavors to secure or take any part of the Trust Estate in any manner other than as set forth herein, then the right of that person to take any interest given to him or her by this Trust shall be determined as it would have been determined had such person predeceased the execution of the trust instrument without surviving issue."

Moreover, Greenelsh correctly argues that her challenge was not directed at an "instrument" as contemplated by the statutory definition of "direct contest." (§ 21300, subd. (b).)[8] Neither the document appointing Johnson as successor trustee nor the memorandum notifying the trustees of Florence's withdrawal of her assets was a "writing that designates a beneficiary or makes a donative transfer of property." (§ 45 [defining "instrument"].) Absent any indication that the settlors intended the no contest clause to apply to such documents, there is no reason for a court to enlarge the scope of the clause.[9]

■ The Court of Appeal also reasoned that Greenelsh's arbitration demand qualified as an "indirect contest" under section 21300, subdivision (c) and case law. We disagree. The statutory definition of "indirect contest," read literally, does not include challenges based on lack of capacity. (§ 21300, subds. (b)(2), (c).)[10] In any event, under the statute and the applicable common law,[11] an indirect contest is one that attacks the validity of an instrument by seeking relief inconsistent with its terms. Greenelsh's claims did not conflict with any trust provisions. The authorities cited by the Court of Appeal, and relied on by Johnson, are inapposite.

---

[8] " 'Direct contest' in an instrument or in this chapter means a pleading in a proceeding in any court alleging the invalidity of an instrument or one or more of its terms based on one or more of the following grounds: [¶] . . . [¶] (2) Lack of capacity." (§ 21300, subd. (b).) We are here concerned only with lack of mental capacity.

At oral argument, Greenelsh raised an additional statutory argument. She suggested that her arbitration demand was not a contest because it was not filed in "any court." (§ 21300, subd. (b); see also *id.*, subds. (c), (d).) We decline to consider this belated claim, but note that under section 21300, subdivision (a), " '[c]ontest' means any action identified in a 'no contest clause' as a violation of the clause." Here, the trust's no contest clause refers to "any proceeding in any court or before any arbitrator."

[9] In a provision applicable only to instruments executed on or after January 1, 2001, and thus not to the Warren Family Trust, the Legislature has specified that a "challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause" does "not constitute a contest unless expressly identified in the no contest clause as a violation of the clause." (§ 21305, subd. (a)(3).)

[10] " 'Indirect contest' means a pleading in a proceeding in any court that indirectly challenges the validity of an instrument or one or more of its terms based on any other ground not contained in subdivision (b), and that does not contain any of those grounds." (§ 21300, subd. (c).) Section 21300, subdivision (b)(2) includes the ground of "[l]ack of capacity."

The statutory definitions of "direct" and "indirect" contest were added to the Probate Code in 2002. (Stats. 2002, ch. 150, § 1.) Previously, the statute defined "contest" in terms that were also directed at an "instrument": " 'Contest' means an attack in a proceeding on an instrument or on a provision in an instrument." (Former § 21300, subd. (a); see Stats. 1990, ch. 79, § 14, p. 972.16.)

[11] The Probate Code provisions governing no contest clauses are "not intended as a complete codification of the law," and "[t]he common law governs enforcement of a no contest clause to the extent [the statutes do] not apply." (§ 21301.)

In *Burch, supra,* 7 Cal.4th 246, a surviving spouse proposed to assert her community property rights in corporate stock, pension plan benefits, and life insurance policies that her husband had transferred to his family trust. She also contemplated filing a separate action asserting her rights to the pension benefits under federal statute. The trust made no accommodation for community property interests, and upon the husband's death divided the estate into six subtrusts, including a marital trust for the spouse. (*Id.* at pp. 252, 255–256.) This court held that the spouse's proposed complaints were designed to evade her husband's express intent to prevent her from taking under the trust while simultaneously asserting independent claims of ownership. (*Id.* at p. 263.) We rejected the spouse's claim that because her federal action sought no relief directly from the trust or the estate, it would not amount to a contest. If successful, the action "would effectively nullify or thwart the provisions in the trust instrument that provide for the allocation of all assets placed in the trust estate to the various subsidiary trusts." (*Id.* at p. 261.)

Here, by contrast, Greenelsh's claims thwarted no distributive scheme created by the trust. They did not even indirectly challenge the validity of any trust provision allocating assets. If Greenelsh were to establish that Florence was incompetent to appoint a successor trustee and withdraw assets, the estate plan set out in the trust would be protected, not thwarted. Nor did Greenelsh assert an independent claim of ownership over trust assets, as did the spouse in *Burch.*

In *Genger v. Delsol* (1997) 56 Cal.App.4th 1410 [66 Cal.Rptr.2d 527], a surviving spouse proposed an action that, under various theories, challenged the validity of a corporate stock redemption agreement providing that shares held by a trust would be returned to the corporation in exchange for cancellation of the husband's debt and transfer of the marital residence from corporate ownership to the trust estate, for distribution to the spouse. (*Id.* at pp. 1417–1418.) Relying on the former statutory definition of "contest" as " 'an attack in a proceeding on an instrument or on a provision in an instrument,' " the spouse contended her challenge to the redemption agreement would not violate the trust's no contest clause. (*Id.* at p. 1420 & fn. 5, quoting former § 21300, subd. (a); see fn. 10, *ante.*)

The court disagreed, relying on *Burch* for the proposition that "[a] 'contest' is not confined to a *direct* attack on a will or trust instrument." (*Genger v. Delsol, supra,* 56 Cal.App.4th at p. 1420, original italics.) The "complaint, if successful, would completely unravel the decedent's estate plan by setting aside the core of that plan, the corporate stock redemption agreement." (*Id.* at p. 1422.) Thus, it would nullify key trust provisions and violate the no contest clause. (*Ibid.*) The *Genger* court also rejected the spouse's claim that she

sought only to reform the redemption agreement to correct her husband's mistake regarding the value of the stock. "[T]he trust instrument expressly calls for transfer of the stock out of the trust estate for redemption . . . while [the] proposed complaint seeks a contrary result." (*Id.* at p. 1423.)

Here, as noted, the proposed challenge does not disrupt an estate plan or nullify any trust provision requiring the transfer of property. Florence was *authorized* to withdraw property from the survivor's trust and to appoint a successor trustee, but the trust does not require those powers to be *exercised* in any particular way. Johnson contends the no contest clause is meaningless if it does not apply to challenges to the documents by which a settlor actually exercises her rights under a trust. However, the no contest clause remains effective against attempts to "void, nullify, [or] set aside [the] Trust or any of its provisions, . . . or to change provisions which are clearly and unambiguously expressed . . . ." (See fn. 7, *ante.*)

The Court of Appeal also reasoned that Greenelsh's challenge to the withdrawal of assets from the survivor's trust amounted to an " 'endeavor[] to secure or take [a] part of the Trust Estate in [a] manner other than as set forth herein,' " under the terms of the no contest clause. It is true that the ultimate result of a successful challenge to the withdrawal would be to preserve a large portion of the trust estate for possible future distribution to Greenelsh and the other beneficiaries. However, they would take their shares in the manner set forth in the trust. It would unduly extend the no contest clause beyond its intended reach to apply it to any action by a beneficiary seeking to restore property to the survivor's trust. Surely, if Florence had withdrawn assets from the survivor's trust as a result of fraud, duress, or mistake, a beneficiary could pursue an action to recover that property after her incapacity or death without running afoul of the no contest clause. No different reasoning applies to a challenge based on lack of capacity.

Johnson relies on *Estate of Friedman* (1979) 100 Cal.App.3d 810 [161 Cal.Rptr. 311] (*Friedman*), in which a daughter's proposed complaint sought millions of dollars in compensatory and punitive damages from her mother's second husband, constructive trusts on estate assets obtained by him under two trusts and the mother's will, and an order restraining his exercise of a power of appointment under a marital trust. The complaint alleged duress by the husband in the execution of the will and trusts. (*Id.* at p. 817.) The court held that the complaint would thwart the wishes expressed in the mother's will, which left the daughter $50,000, named the husband as remainder beneficiary of the marital trust, and included a no contest clause. (*Id.* at p. 818.)

The scope of the proposed complaint in *Friedman* far exceeded Greenelsh's challenge to Florence's capacity to appoint Johnson and withdraw assets from the survivor's trust. Unlike Greenelsh's arbitration demand, the daughter's complaint in *Friedman* "squarely" contested the terms of the will, and was "designed to frustrate th[e] testamentary plan" by securing a recovery that was plainly inconsistent with the terms of the will and the related trusts. (*Friedman, supra,* 100 Cal.App.3d at p. 818.) Moreover, the daughter attempted to restrain the husband from exercising his power of appointment under the marital trust. Greenelsh did not seek to *restrain* Florence's powers under the trust, but only to determine whether she was mentally competent to exercise them herself.

*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162 [11 Cal.Rptr.2d 448] (*Scharlin*), is more on point. There, a son (Joseph) sought to challenge the validity of an amendment to a survivor's trust depriving him of his share of the trust estate, based on duress or undue influence by his sister (Jacqueline) over their mother. (*Id.* at pp. 165–166.) The relevant part of the *Scharlin* court's analysis came in response to Jacqueline's claim that the proposed petition violated no contest clauses in the original trust and the amendment, by attacking the surviving settlor's power to amend the trust and her power of appointment over survivor's trust assets. Jacqueline argued that the power to amend was built into the structure of the estate plan, and that an unrestricted power of appointment was essential to preserve the marital deduction under federal estate tax law. (*Id.* at pp. 169–170.) The court was not persuaded.

"What Jacqueline fails to recognize . . . is that Joseph's proposed challenge is not on the surviving settlors' power to amend or revoke the surviv[or's] trust. Rather it amounts to an attack on how the amendment occurred, namely, by the alleged exercise of duress or undue influence upon the settlor. Joseph does not contend the surviving settlor lacked the right or power to amend. Rather, he argues the surviving settlor did not in fact amend the trust, and any so-called amendment was the result of duress or undue influence, not the free will of the settlor. Accordingly, we hold Joseph's proposed contest of the amendment . . . is not a challenge to the power to amend the surviv[or's] trust or to the general power of appointment." (*Scharlin, supra,* 9 Cal.App.4th at p. 170.)[12]

---

[12] Johnson attempts to distinguish *Scharlin* by noting that there, the original trust's no contest clause did not refer to amendments, whereas the no contest clause in the survivor's trust amendment did include challenges to amendments. However, the *Scharlin* court considered this point only in response to Jacqueline's claim that Joseph would be barred from recovering under a separate decedent's trust if he failed to invalidate the survivor's trust amendment. The court reasoned that because the mother could not amend the original no contest clause insofar as it applied to the irrevocable decedent's trust, Jacqueline could not apply the no contest clause in the survivor's trust amendment to Joseph's rights under the

Similarly, Greenelsh's proposed challenge here was directed not at the powers of appointment and withdrawal conferred by the trust provisions, but at whether Florence was mentally competent to exercise those powers. There is merit in Greenelsh's claim that her challenge was consistent with her fiduciary obligations as a trustee. (See §§ 16000, 16002, 16006; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 63 et seq., p. 637 et seq.) Certainly, under the case law reviewed above, a trustee who is also a beneficiary might violate a no contest clause by taking action to reverse a settlor's exercise of rights conferred by the trust, if the action would effectively nullify or alter the estate plan set out in the trust. This, however, is not such a case.

## DISPOSITION

We reverse the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

---

decedent's trust. (*Scharlin, supra,* 9 Cal.App.4th at pp. 170–171.) This aspect of the court's holding does not apply to the case before us.