Filed 8/30/16  Portfolio Recovery Assocs. v. Stein CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | B263385 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC120292) |
| v. | |
| JONATHAN A. STEIN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Hart Cole, Judge.  Affirmed.

Law Offices of Jonathan Stein and Jonathan A. Stein for Defendant and Appellant.

Legal Recovery Law Offices and John M. Goodman for Plaintiff and Respondent.

_____

## SUMMARY

Jonathan A. Stein, an attorney proceeding in pro. per., appeals from the denial of his petition to compel arbitration in a debt collection proceeding. We affirm.

## BACKGROUND

In June 2005, MBNA America Bank (MBNA) approved Stein for a $48,000 line of credit with an 84-month term (LOC Account) and transferred $45,000 to two accounts Stein had designated. Along with the approval letter, MBNA sent Stein a form account agreement (MBNA Agreement), which contained an arbitration provision providing: "Any claim or dispute . . . by either you or us against the other . . . arising from or relating in any way to this Agreement . . . or your Account . . . shall be resolved by binding arbitration."[1] Soon thereafter, Bank of America Corporation acquired MBNA.

In 2010, five years after opening the LOC Account, Stein stopped making payments. Bank of America (through a subsidiary[2]) sold Stein's LOC Account in 2011 to Portfolio Recovery Associates LLC (PRA) as part of a pool of charged-off accounts.

On March 8, 2013, PRA filed the instant action, alleging breach of written contract and an account stated claim, and seeking the unpaid balance on Stein's LOC Account of $30,825.08. Stein answered and asserted 41 affirmative defenses, not including PRA's failure to pursue arbitration under the MBNA Agreement. PRA and Stein proceeded with discovery and trial was scheduled for June 2, 2014.

On May 19, 2014, two weeks before trial, PRA provided Stein with its trial exhibits, erroneously including a Bank of America form cardholder agreement (BofA

---

[1] The MBNA Agreement provided for arbitration under the rules and procedures of the National Arbitration Forum.

[2] The subsidiary, FIA Card Services, is described on Stein's loan statements from Bank of America as the administrator of his LOC Account.

Agreement), which contained an arbitration provision.[3] Because the BofA Agreement governed credit card accounts but Stein's account was for a line of credit, not a credit card, PRA had not previously produced the BofA Agreement during discovery.

On May 21, 2014, Stein petitioned to compel arbitration under Code of Civil Procedure section 1281.2 and to stay court proceedings.[4] Stein's petition to compel arbitration was based entirely on the BofA Agreement's arbitration provision; it did not refer to the MBNA Agreement or its arbitration provision. Stein explained that the lateness of his petition to compel arbitration was the result of PRA not providing the BofA Agreement until two days earlier, despite Stein's earlier discovery requests for all documents related to his loan.

After cancelling the October 2014 hearing date he had reserved for his petition, Stein filed a second petition to compel arbitration that was identical to his first petition with a new, reserved hearing date in January 2015.

In its opposition to Stein's petition, PRA withdrew the BofA Agreement from its trial exhibits, explaining that its inclusion had been a mistake, as Stein's account was for a line of credit, not a credit card. PRA represented that the MBNA Agreement was the governing agreement and had been produced to Stein as part of PRA's November 2013 discovery response. PRA noted Stein would have also received the MBNA Agreement in June 2005 when he first opened his LOC Account, and argued Stein should be deemed to have known of his right to arbitration since that time. Therefore, PRA contended, Stein had waived any right to arbitration under the MBNA Agreement by litigating this action.

---

[3] The BofA Agreement provided for arbitration under the American Arbitration Association rules and procedures.

[4] Code of Civil Procedure section 1281.2 provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner . . . ."

Stein filed no reply in support of his petition to compel arbitration and did not attend the hearing.[5]  In its tentative decision, the trial court reasoned that, because PRA had withdrawn the BofA Agreement and was proceeding on the MBNA Agreement previously produced during discovery, the impetus for Stein's sudden request for arbitration had been eliminated.  As for whether Stein could seek arbitration based on the MBNA Agreement, the trial court concluded he had waived such a right.  Citing to the factors in *Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203 (*St. Agnes*), the trial court found Stein had "waited too long" and PRA would be substantially prejudiced given that the new trial date was only three months away, the trial had already been continued once to accommodate Stein's petition to compel arbitration based on the BofA Agreement, and proceedings had been further delayed because Stein had taken his original petition off calendar.[6]

The trial court denied Stein's petition to compel arbitration.

Stein appealed.

## DISCUSSION

Stein argues the trial court erred by ignoring the BofA Agreement and treating the MBNA Agreement as the governing contract.  In the alternative, he argues (1) the MBNA Agreement required the issue of waiver be decided by an arbitrator, (2) the trial court should have applied federal law rather than California law to decide the issue of waiver, and (3) the trial court erred in finding waiver under California law.

We review a trial court's denial of a motion to compel arbitration for abuse of discretion.  (*Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1318, 1320; *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 486.)

---

[5] There is no transcript of the hearing in the record on appeal.

[6] In his motion to augment the clerk's transcript with the tentative decision, Stein declared that to his knowledge after due inquiry, the trial court adopted the tentative decision as its final order.

4

## I.  Trial Court Correctly Disregarded the BofA Agreement

Stein argues the MBNA Agreement did not control and even if it did, it lacked foundation, but he never objected in the trial court to consideration of the MBNA Agreement nor alleged any "evidentiary problems" with it and cannot raise these arguments for the first time on appeal.  (Evid. Code, § 353.)  Likewise, Stein never disputed below PRA's representation that the BofA Agreement was inapplicable to PRA's claims.  It is well established that a party may not raise new issues on appeal not presented to the trial court.  (See, e.g., *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Estate of Westerman* (1968) 68 Cal.2d 267, 279 [citing cases].)

Even if we were to consider Stein's contention that the BofA Agreement was the controlling contract, his argument is meritless.

Stein contends there is a factual dispute as to which contract governed his account because the loan statements he received were "labeled" Bank of America, which in his view suggested the BofA Agreement was the controlling contract because it, too, was "labeled" Bank of America.  This argument ignores Bank of America's acquisition of MBNA and the fact that Stein's LOC Account was for a line of credit, whereas the BofA Agreement on its face governed only credit cardholder accounts.  Similarly, it ignores Stein's admission that he took out the original loan from MBNA and had never seen the BofA Agreement before PRA mistakenly provided it as a trial exhibit.

Stein also suggests that because the MBNA Agreement addressed an account ending in "1613" and PRA's complaint referred to an account ending in "8964," the trial court relied upon the wrong contract.  The record, however, shows that although the "original" account number for Stein's LOC Account ended in "-613," when Stein's account was charged off, it was assigned a new account number ending in "-964."  In other words, the two account numbers refer to the same LOC Account.

Pointing to his $48,000 credit limit under the 2005 MBNA Agreement and the lower, $35,200 credit limit listed on his 2009 loan statement from Bank of America, Stein suggests that the MBNA Agreement must have been "superseded by a new contract with a smaller credit," i.e. the BofA Agreement.  This reasoning, however, ignores the terms

5

of the MBNA Agreement, giving MBNA (or its successor) the right to change a borrower's credit limit on the LOC Account. Accordingly, the lender could lower the credit limit on the LOC Account to reflect its assessment of Stein's diminishing creditworthiness simply by exercising its authority under the MBNA Agreement and without the need for a superseding contract.[7]

Next, Stein claims that PRA's representation that it provided the MBNA Agreement in its November 2013 discovery response was in "direct contradiction" to his declaration in support of his petition that no such document had been provided, thus creating a factual dispute. We reject this argument because Stein's declaration only states that he did not receive the BofA Agreement as part of PRA's verified discovery responses; it did not discuss the MBNA Agreement.

In short, Stein's arguments that the BofA Agreement is the governing contract are without merit.

## II.    Stein Waived His Right To Arbitration Under The MBNA Agreement

On appeal, Stein contends the trial court erred in finding he waived his right to arbitration under the MBNA Agreement.

Citing no relevant case law, Stein argues for the first time that the waiver issue should have been decided by an arbitrator. We may disregard on appeal conclusory arguments made without citation to recognized legal authority and issues not raised below. (See *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384; *Johnson*, *supra*, 47 Cal.4th at p. 603.) In any event, under California law, a court, not an arbitrator, determines whether a party has waived the right to arbitration. (Code Civ. Proc., § 1281.2; *Engalla v. Permanente Med. Group, Inc.* (1997) 15 Cal.4th 951, 982.)

Stein initially argued that federal law, rather than California law, governed the issue of waiver. PRA countered that Stein invited any error in the trial court's reliance on

---

[7] In fact, the Bank of America loan statements Stein cites to for this argument show that Bank of America availed itself of its right to lower his credit limit on at least two occasions in 2009, reducing Stein's LOC Account credit limit from $35,200 in May 2009 to $33,700 in August 2009, and then to $32,500 in December 2009.

6

California law because his petition to compel arbitration cited to California law and in particular *St. Agnes*, *supra*, 31 Cal.4th 1187 and its factors for determining waiver. In his reply, Stein does not dispute that the trial court's application of California law was the result of invited error, and instead, argues the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), refined the *St. Agnes* factors. We agree that Stein is estopped by the invited error doctrine from asserting error in the trial court's application of California law to this case. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [one whose conduct induces or invites the commission of error by the trial court is estopped from asserting it as a ground for reversal].)

In *St. Agnes*, *supra*, 31 Cal.4th 1187, the Supreme Court set forth six factors a court may consider in determining waiver: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the 'delay affected, misled or prejudiced' the opposing party."'" (*Id.* at p. 1196; see *Iskanian*, *supra*, 59 Cal.4th at p. 375 [quoting same].) "[P]rejudice is typically found where 'the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.'" (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 947.)

Here, Stein opened his LOC Account from MBNA in June 2005. The MBNA Agreement included an arbitration provision. Stein's request for arbitration under the irrelevant BofA Agreement was made only two weeks before trial was originally set to start in June 2014. The trial was stayed pending a decision on Stein's motion to compel,

7

and was further delayed because Stein cancelled the hearing date on his original petition only to re-file the identical petition for a hearing date three months later. A second set of trial dates had to be vacated three days before the start of the jury trial. Thus, since PRA filed its complaint in 2013, Stein and PRA have attended a status conference, propounded and exchanged discovery, attended a final settlement conference, exchanged trial exhibits, and prepared twice for an imminent jury trial. In this context, any benefits and efficiencies of arbitration have been substantially impaired.

Stein argues this case is similar to *Iskanian, supra*, 59 Cal.4th 348, because any delay on his part in seeking arbitration was justified. In *Iskanian*, the defendant asserted as an affirmative defense that plaintiff's claims were subject to binding arbitration and successfully moved to compel arbitration; the defendant, however, later withdrew the motion to compel arbitration because an intervening California Supreme Court case effectively invalidated the arbitration provision at issue, only to have a United States Supreme Court case several years later call into question that California case. (*Id.* at pp. 361-362.) When the defendant renewed its motion to compel arbitration in light of the changed law, the plaintiff argued that the defendant had waived its right to arbitration. The California Supreme Court found the defendant's delay in seeking arbitration the second time was not caused by its "unreasonable or unjustified conduct" because the defendant had timely sought arbitration and abandoned it only for a period when arbitration was foreclosed by then-existing law. (*Id.* at pp. 377-378.) In contrast to *Iskanian*, Stein adduces no facts and points to no law that could justify his delay in seeking arbitration here.

We have considered Stein's remaining arguments and find them to be without merit. The trial court did not abuse its discretion in concluding he waived his right to arbitration.

8

**DISPOSITION**

The order denying the petition to compel arbitration is affirmed. Respondent is awarded costs.

NOT TO BE PUBLISHED.


                                        CHANEY, Acting P. J.


WE CONCUR:



        JOHNSON, J.



        LUI, J.