Filed 9/3/24  Loflin v. Creative Care CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARQUITA HAIRE LOFLIN et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CREATIVE CARE, INC. et al., <br><br> Defendants and Appellants. | B325585 <br><br> (Los Angeles County Super. Ct. No. 22STCV21220) |

APPEALS from an order of the Superior Court of Los Angeles County, Virginia C. Keeny, Judge.  Affirmed.

Citron & Citron, Thomas. H. Citron and Katherine A. Tatikian for Defendants and Appellants Creative Care, Inc., Dr. Morteza Khaleghi and Dr. Karen Khaleghi.

Lewis Brisbois Bisgaard & Smith LLP, Lann G. McIntyre, Tracy D. Forbath, Raymond K. Wilson and Kathleen M. Walker for Defendant and Appellant Farrah Khaleghi.

Brown, Neri, Smith & Khan LLP, Amjad M. Khan and Jacquelynn K. M. Levien for Plaintiffs and Respondents.

_____

Creative Care, Inc., Morteza Khaleghi, Karen Khaleghi, and Farrah Khaleghi (collectively, Creative Care defendants) appeal from an order denying their motions to compel arbitration of the causes of action asserted by Marquita Haire Loflin and McKenzie Loflin (collectively, Loflin heirs) for wrongful death, fraudulent misrepresentation, and intentional infliction of emotional distress, and the survival and elder abuse causes of action asserted by the estate of Johnathon Loflin.[1] The Creative Care defendants contend all the causes of action are subject to arbitration, including those brought by the nonsignatory Loflin heirs, and the trial court erred in denying their motions. Farrah Khaleghi (Khaleghi) also argues the court abused its discretion in denying arbitration of the estate's claims pursuant to Code of Civil Procedure section 1281.2, subdivision (c),[2] which provides an exception to mandatory arbitration where a party to an arbitration agreement and parties not bound by the agreement assert claims in an action arising out of the same transaction. We affirm.

_____

[1] Creative Care, Inc., Morteza Khaleghi, and Karen Khaleghi filed one motion to compel arbitration; Farrah Khaleghi filed a separate motion. We refer to the motions collectively as the motions to compel arbitration and indicate where an argument is asserted only by Farrah Khaleghi.

[2] Further undesignated statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Treatment at the Rehabilitation Facility and the Arbitration Agreement*

On October 18, 2019 Johnathon Loflin (Johnny)[3] was admitted into the Creative Care rehabilitation facility for treatment of his mental health issues and substance abuse disorder in a residential inpatient program. On the day of his admission Johnny signed Creative Care's Admissions Agreement (admissions agreement). On December 20 Johnny signed a second admission agreement. Both agreements contained the following arbitration provision: "BINDING ARBITRATION: The Client, any Guarantor of the Client's payment and the facility agree that Binding Arbitration is the sole and the exclusive remedy against Creative Care and its staff. Any such Binding Arbitration must be conducted in Los Angeles County and the prevailing party, in addition to any other awards received, shall be entitled to reasonable attorney's fees and costs."

On December 18, 2019, while Johnny was still at the facility, Creative Care lost accreditation for its substance abuse treatment services. Late at night on February 12, 2020, Creative Care informed Johnny's family that the facility was going to transfer Johnny immediately to another facility, even though his therapist advised against the transfer. Creative Care told Johnny's family the transfer would cost $5,000. Johnny's sister McKenzie objected to the transfer, but Creative Care's senior admissions coordinator told her that Johnny would be transferred

_____

[3]  We refer to the Loflin parties by their first names to avoid confusion. Our factual recitation is based on the allegations in the complaint.

or he would be "out on the street" that night.  After speaking with one of Creative Care's doctors and its founder, McKenzie agreed to transfer Johnny to the other facility.  Less than two months after being transferred, Johnny was found unresponsive in a bathroom after ingesting fentanyl, and he died soon after.

B.    *The Complaint*

On June 29, 2022, the Loflin heirs and Johnny's estate filed an action against the Creative Care defendants.  The Loflin heirs alleged causes of action for wrongful death (§ 377.60 et seq.), fraudulent misrepresentation, and intentional infliction of emotional distress; Johnny's estate alleged causes of action for survival (§ 377.30 et. seq.) and violations of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.).[4]  All claims were based on a common set of "facts giving rise to all claims."  (Capitalization, boldface, and underlining omitted.)

The wrongful death and survival causes of action alleged, using almost identical language, that the Creative Care defendants owed a duty of care to Johnny, and they breached that duty by failing to provide medical care for his physical and mental needs, ultimately causing his death.  The elder abuse cause of action alleged the Creative Care defendants "neglected Johnny by failing to use the degree of care that a reasonable person in the same situation [as his caretaker] would have used

---

[4]    The amended complaint separately alleged a cause of action for "professional liability—negligence" against Cliffside Malibu, Inc.  Cliffside Malibu was later dismissed from the action pursuant to a good faith settlement.

4

in providing for Johnny's basic needs."  The fraudulent misrepresentation cause of action alleged that Creative Care made intentionally false representations to Johnny's family regarding his psychiatric care.  The intentional infliction of emotional distress cause of action alleged the Creative Care defendants' misrepresentations regarding psychiatric care and threats to throw Johnny "'out on the street'" were "outrageous, i.e., so extreme as to exceed all bounds of that usually tolerated in a civilized community," causing the Loflin heirs to suffer emotional distress.

C.    *The Creative Care Defendants' Motion To Compel Arbitration*

In August 2022 the Creative Care defendants filed their motions to compel arbitration (styled as petitions to compel arbitration).  The Creative Care defendants argued the arbitration provision in the admissions agreement bound the Loflin heirs, even though only Johnny signed the agreement, because the agreement reflected the parties' intent that all claims arising from the care and services rendered to Johnny during his stay at Creative Care be arbitrated.  Further, the Loflin heirs were required to arbitrate their claims pursuant to section 1295, which sets forth requirements for arbitration provisions in contracts for medical services. They also highlighted California's strong public policy favoring arbitration.

In their oppositions, the Loflin plaintiffs argued the heirs were not bound by the arbitration provision because it did not purport to bind the heirs, successors, or family members. Further, section 1295 did not apply because the arbitration agreement did not comply with the statutory requirements.  In

5

addition, given the possibility of conflicting rulings if the estate's claims were arbitrated and the Loflin heirs' claims litigated in court, the court should exercise its discretion under section 1281.2, subdivision (c), to deny arbitration of the estate's claims.

In their reply briefs, the Creative Care defendants argued section 1281.2, subdivision (c), did not apply because all the parties were bound by the arbitration agreement, so there were no third parties. Khaleghi also argued that, "[a]t a bare minimum, the causes of action brought on behalf of the estate should be ordered to arbitration . . . with any causes of action not subject to arbitration (if any) remaining stayed pending the completion of arbitration."

D.     *The Trial Court's Ruling*

At the December 12, 2022, hearing on the motions, the Creative Care defendants' attorney asserted, among other arguments, that under the Supreme Court's decision in *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*), nonsignatory heirs are required to arbitrate professional negligence claims brought against health care providers under section 1295. The Loflin plaintiffs' counsel argued *Ruiz* was inapplicable because, unlike in *Ruiz*, the arbitration agreement did not reflect an intent to bind the Loflin heirs. Following arguments from the attorneys, the trial court took the matter under submission.

On December 15, 2022 the trial court issued an order denying the motions to compel arbitration. The court found (1) the arbitration agreement did not comply with the mandatory provisions of section 1295; and (2) there was no evidence of an intent to bind the nonsignatory Loflin heirs to the arbitration

6

agreement. The court exercised its discretion under section 1281.2, subdivision (c), to deny arbitration of all claims because the wrongful death and survivor claims were based on the same facts, and there was a strong possibility of conflicting rulings on common issues of law and fact if the estate's claims were arbitrated and the Loflin heirs' claims were litigated in court.[5]

The Creative Care defendants timely appealed.

## DISCUSSION

A.  *Governing Law on Arbitration Agreements and Standard of Review*

Section 1281.2 requires the trial court to order arbitration of a controversy, subject to exceptions not applicable here, "'[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists.'" (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1119-1120.) "Generally speaking, one must be a party to an arbitration agreement to be bound by it. 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration.'" (*Monschke v. Timber Ridge Assisted Living, LLC* (2016) 244 Cal.App.4th 583, 586-587;

---

[5]  For ease of reference, like the trial court, we refer to the Loflin heirs' claims collectively as their wrongful death claims and the estate's claims as the survivor claims.

7

accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC* (2012) 55 Cal.4th 223, 236 [""a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit"""].)

In *Ruiz, supra*, 50 Cal.4th at page 841, the Supreme Court carved out an exception to the general rule that only parties to arbitration agreements are bound, holding with respect to medical malpractice claims that "all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295, at least when . . . the language of the agreement manifests an intent to bind these claimants." The court in *Ruiz* explained, "'Section 1295 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). . . . The purpose of section 1295 is to encourage and facilitate arbitration of medical malpractice disputes. [Citations.] Accordingly, the provisions of section 1295 are to be construed liberally.' In other words, the encouragement of arbitration "'as a speedy and relatively inexpensive means of dispute resolution'" [citation] furthers MICRA's goal of reducing costs in the resolution of malpractice claims and therefore malpractice insurance premiums." (*Id.* at pp. 843-844; accord, *Holland v. Silverscreen Healthcare, Inc.* (2024) 101 Cal.App.5th 1125, 1132 ["*Ruiz* concluded 'that section 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions.'"]; *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 682 (*Daniels*).)

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists, and the party opposing arbitration bears the burden of proving unconscionability or other defenses.

(*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S), LLC, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) "Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement." (*Trinity v. Life Ins. Co. of North America, supra*, 78 Cal.App.5th at p. 1120; accord, *Villareal v. LAD-T, LLC* (2022) 84 Cal.App.5th 446, 456 ["[W]e independently review the order [to compel arbitration] if the trial court's denial rests solely on a question of law."].)

B.      *The Loflin Heirs Are Not Bound by the Arbitration Agreement*

The Creative Care defendants contend that, as in *Ruiz, supra*, 50 Cal.4th at pages 850 to 851, the Loflin heirs are bound by the arbitration agreement even though they did not sign the admissions agreement. There are two fatal flaws in the Creative Care defendants' argument: the arbitration agreement did not purport to bind Johnny's heirs, and the arbitration agreement did not comply with section 1295.

The arbitration agreement in *Ruiz* provided "that this agreement binds all parties whose claims may arise out of or relate to treatment or service provided by the physician *including any spouse or heirs of the patient and any children*, whether born or unborn, at the time of the occurrence giving rise to the claim." (*Ruiz, supra*, 50 Cal.4th at pp. 841-842, italics added.) By contrast, the arbitration agreement here stated only that Johnny, any guarantor, and the Creative Care facility agreed that arbitration "is the sole and the exclusive remedy against Creative Care and its staff." The absence of language in the arbitration agreement binding heirs, spouses, or family members shows a

lack of intent to bind anyone other than Johnny and Creative Care (or a guarantor).[6]

This case also differs from *Ruiz* because the admissions agreement failed to comply with MICRA's requirements in section 1295. Section 1295, subdivision (a), provides that the first article of any contract requiring arbitration of medical malpractice disputes "shall have" the following language: "'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'"

---

[6] Khaleghi contends that because Johnny's sister McKenzie was designated as his agent for purposes of obtaining care for Johnny, as alleged in the complaint, she was bound by the Agreement under Civil Code section 2337, which states a principal may bind an agent "if such intent is plainly inferable from the instrument itself." But it is not "plainly inferable" from the arbitration agreement that the parties intended to bind anyone other than the signatories. Further, the fact McKenzie was Johnny's agent for the purpose of obtaining medical care for him does not mean she intended to give up her right to a jury trial on any claims she might have in her personal capacity.

10

The first article in the admissions agreement does not contain the mandatory language prescribed by section 1295, subdivision (a), providing only: "1. ADMISSION: The undersigned hereby requests admission for the above-named client to [Creative Care]." The arbitration provision is contained in paragraph 16 on the second page of the admissions agreement.

Moreover, the admissions agreement does not comply with MICRA's notice requirement under section 1295, subdivision (b), which provides, "Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type: [¶] NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT." Here, the admissions agreement contains no such notice provision above the client signature line (or anywhere). Indeed, the arbitration provision, placed in the middle of the agreement, does not state that the parties are waiving their right to a jury, nor is it in red bold type or capital letters.

Because the arbitration agreement failed to give the required notice under MICRA, section 1295 cannot be relied on to require the nonsignatory Loflin heirs to arbitrate their claims. (*Herbert v. Superior Court, supra,* 169 Cal.App.3d at p. 727 ["Under section 1295, arbitration of wrongful death or other professional negligence claims may not be compelled if the requirements of that section are not met."]; see *Daniels, supra,* 212 Cal.App.4th at p. 683 [explaining in affirming denial of motion to compel arbitration of wrongful death claims, "we

11

disagree that *Ruiz* should be extended to arbitration agreements not governed by section 1295"].)

*Herbert v. Superior Court* (1985) 169 Cal.App.3d 718, 720, 725, relied on by the Creative Care defendants, does not support their position. There, Clarence Herbert's estate filed claims for medical negligence and fraud arising out of his death following surgery, and his heirs filed claims for wrongful death and other torts. (*Id*. at pp. 720-721.) It was undisputed that Herbert was bound by an arbitration agreement in a health care service plan that covered his wife and minor children, requiring arbitration for "any claim asserted by a member or a *member's heir* or personal representative." (*Id*. at p.720, italics added.) The Court of Appeal concluded that Herbert's wife and minor children were bound by the arbitration agreement because the agreement explicitly bound Herbert's heirs; Herbert had the legal ability to bind his wife and minor children; and the health care service plan provided notice of the arbitration provision similar to that required under section 1295. (*Id*. at pp. 726-727.) None of these factors is present here.

Finally, the Creative Care defendants contend that although the Loflin heirs did not sign the arbitration agreement, they were bound as the "'[g]uarantor[s] of the Client's payment'" because they "paid for [Johnny's] treatment." However, the term "guarantor" is not defined anywhere in the agreement. Even under paragraph 19, which is titled "Billing and Payments" (capitalization omitted), there is no mention of a guarantor of payments for Johnny. Paragraph 19 provides, "If you are paying privately for treatment, you are expected to pay at the time of admission," suggesting only Johnny was responsible for payment. Moreover, Civil Code section 2787 defines a "guarantor" as "one

12

who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." The Creative Care defendants presented no evidence that the Loflin heirs ever agreed to be guarantors of Johnny's payments within the meaning of Civil Code section 2787. McKenzie made one payment of $5,000 for Johnny's transfer to the new treatment facility, but that did not make her the guarantor of Johnny's payments.

C.    *The Trial Court Did Not Abuse Its Discretion in Denying the Motions To Compel Arbitration as to All Plaintiffs*

1.    *Section 1281.2, subdivision (c)*

"[S]ection 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies. [Citation.] Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of a conflicting ruling on common factual or legal issues." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967; see *Leenay v. Superior Court* (2022) 81 Cal.App.5th 553, 564 [§ 1281.2, subd. (c), "addresses litigation with a third party that raises 'common issue[s] of law and fact'"].)

Section 1281.2, subdivision (c), provides an exception to mandatory arbitration where "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." All three requirements must be satisfied before section 1281.2,

subdivision (c), may be invoked to deny a motion to compel arbitration. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 845 (*Avila*); *Acquire II, Ltd. v. Colton Real Estate Group, supra,* 213 Cal.App.4th at p. 968.) "For purposes of the statute, a third party is one who is neither bound by nor entitled to enforce the arbitration agreement." (*Daniels, supra,* 212 Cal.App.4th at pp. 679.)

If the requirements of section 1281.2, subdivision (c), are met, "the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2, last para.; see *Leenay v. Superior Court, supra,* 81 Cal.App.5th at p. 564.) "'[T]he ultimate determination [pursuant to section 1281.2, subdivision (c),] whether to stay or deny arbitration based on the possibility of conflicting rulings on common questions of law or fact is reviewed for an abuse of discretion.'" (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 946-947; accord, *Avila, supra,* 20 Cal.App.5th at p. 845; *Daniels, supra,* 212 Cal.App.4th at p. 680.)

2. *The trial court did not abuse its discretion in denying arbitration of all claims under section 1281.2, subdivision (c)*

The Creative Care defendants contend the third-party exception under 1281.2, subdivision (c), does not apply because

14

there were no "third parties" to the arbitration agreement, relying on their argument that the Loflin heirs were bound by the arbitration agreement. As discussed, the Loflin heirs were not bound by the arbitration agreement; therefore, they are third parties under subdivision (c). (*Daniels, supra*, 212 Cal.App.4th at p. 679.)

The holding in *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, relied on by the Creative Care defendants, is not to the contrary. In *Laswell*, a former patient in the Country Villa healthcare facility filed a lawsuit (through her daughter) against the facility operator, the owner, and the management company for elder abuse and related claims. (*Id*. at p. 1402.) The trial court denied the defendants' motion to compel arbitration on multiple grounds, including that although the plaintiff had signed the arbitration agreement, some of the defendants did not, and therefore, they were "third parties" under section 1281.2, subdivision (c). (*Laswell*, at p. 1404.) The Court of Appeal reversed, holding the exception to arbitration under section 1281.2, subdivision (c), "does not apply when all defendants, including a nonsignatory to the arbitration agreement, have the right to enforce the arbitration provision against a signatory plaintiff." (*Laswell*, at p. 1405.) Because the defendants were "related Country Villa entities," they could all enforce the arbitration agreement and were therefore bound by it. (*Id*. at p. 1407.) Unlike in *Laswell*, the Loflin heirs were nonsignatory plaintiffs, and there was no basis on which they could enforce the arbitration agreement; therefore, they were not bound by the agreement.

The other two requirements for application of section 1281.2, subdivision (c), are also met. The Loflin heirs'

15

claims and the estate's claims, as alleged, are all based on the same "facts giving rise to all claims" (capitalization, boldface, and underlining omitted), namely, that in February 2020 Johnny's family was forced to transfer Johnny to another facility even though the transferee facility was not appropriate for Johnny's treatment, and due to the lack of proper treatment at the new facility, Johnny died two months later after ingesting fentanyl. Therefore, the claims arise out of the same transaction or series of transactions. (See *Avila, supra*, 20 Cal.App.5th at p. 845 [the survivor and wrongful death claims "involve the same set of operative facts"]; *Daniels, supra*, 212 Cal.App.4th at p. 686 [the survivor and wrongful death claims were all "based on the allegation that [the decedent] received inadequate care at Sunrise"].)

In addition, as the trial court found, because "the wrongful death claim is based on the same facts as the survivor claims, there is a possibility of conflicting rulings on common issues of law and fact" if the estate's claims were arbitrated and the Loflin heirs' claims were litigated in the trial court. (See *Avila, supra*, 20 Cal.App.5th at p. 845 [because the claims involved the same operative facts, "[i]f the survivor claims were arbitrated while the wrongful death claim was litigated, there is a strong possibility of inconsistent rulings"]; *Daniels, supra*, 212 Cal.App.4th at p. 686 [because the claims were based on the same alleged inadequate care, "if the survivor claims are ordered to arbitration but Daniels's wrongful death claim was not, there is a possibility of inconsistent rulings on the claims"].)

As the Court of Appeal observed in *Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1322, in which the decedent's family members sued a nursing home, hospital, and treating

doctors for wrongful death and survivor claims, if the trial court only compelled the survivor claims to arbitration, "different triers of fact could reach different conclusions as to which party was at fault, the cause of any injuries, and the apportionment of liability—unless all the parties are joined in one action."  Here, as in *Birl*, different triers of fact could reach conflicting decisions with respect to liability of Creative Care and the individual doctors.

Once the trial court determined that all three requirements for application of section 1281.2, subdivision (c), were met, it had discretion to select one of the four options in the last paragraph of section 1281.2.  Khaleghi contends that even if section 1281.2, subdivision (c), applied, the trial court abused its discretion by selecting option (1) (refusing to enforce the arbitration agreement) instead of option (3) (ordering arbitration of the estate's claims and staying litigation of the heirs' claims).  This argument is unavailing.

Khaleghi failed to raise this argument in her motion to compel arbitration in the trial court, forfeiting the challenge. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 866 ["'[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.'"].) In addition, Khaleghi failed in her opening brief to provide any legal or factual argument why the trial court abused its discretion in selecting option (3) instead of option (1).  (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [appellant's "burden on appeal 'includes the obligation to present *argument and legal authority* on *each point* raised.'"].)  Even if Khaleghi did not forfeit this argument, it was well within the court's discretion to select option (1) and refuse to compel the estate's claims to

17

arbitration, which would delay relief for the Loflin heirs until the arbitration had concluded. (See *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 475 [rejecting argument that the trial court should have compelled arbitration of the estate's claims and stayed the heirs' claims because on appeal the court "will not disturb the court's discretionary ruling unless it exceeded the bounds of reason"].)

## DISPOSITION

The order denying the Creative Care defendants' motions to compel arbitration is affirmed. The Loflin plaintiffs are entitled to recover their costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.


STONE, J.