Filed 7/14/23  Hunt v. Simplified Labor Staffing Solutions CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANDRE HUNT, | B319792 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV23795) |
| v. | |
| SIMPLIFIED LABOR STAFFING SOLUTIONS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Reversed and remanded with directions.

Hill Farrer & Burrill, E. Sean McLoughlin and Clayton J. for Defendant and Appellant.

James R. Hawkins, Gregory Mauro, Mitchell J. Murray and Michael Calvo for Plaintiff and Respondent.

————————

# INTRODUCTION

Simplified Labor Staffing Solutions, Inc. (Simplified) appeals an order denying its motion to compel arbitration of Andre Hunt's (Hunt) claim under the California Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA).[1]  Simplified's motion was based on Hunt's predispute agreement to arbitrate all claims arising from their employment relationship.

On appeal, Hunt concedes that his claim for civil penalties based on alleged Labor Code violations he personally suffered (his "individual" PAGA claim) is subject to arbitration under *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [213 L.Ed. 2d, 142 S.Ct. 1906] (*Viking River*), decided three months *after* the trial court's order denying the motion to compel arbitration.  We agree and reverse.  We remand with directions to enter an order compelling Hunt's individual PAGA claim to arbitration.

We further hold that the scope of the arbitration agreement is to be determined by the arbitrator, in accordance with the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures, incorporated into the parties' arbitration agreement.  Specifically, the parties' dispute about whether non-individual PAGA claims are governed by the arbitration agreement, in the same way individual PAGA claims are, is an issue for the arbitrator to address.  Accordingly, we reverse with directions that the arbitrability of Hunt's non-individual PAGA claims should be determined by the arbitrator.

---

[1]     Undesignated statutory references are to the Labor Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Background Information

Simplified operates as a workforce temporary staffing agency, providing services to various businesses to meet their staffing needs.

On May 14, 2020, Hunt was employed by Simplified as a "non-exempt" employee.  He was assigned by Simplified to perform services at Yusen Logistics (Americas), Inc. (Yusen), which operates as a transportation and logistics company.

Hunt's last day of employment was sometime in late October 2020.

### II.  Hunt's Complaint[2]

On June 28, 2021, Hunt filed a complaint against Simplified and Yusen, alleging a single PAGA claim "on behalf [of] the general public and all non-exempt aggrieved employees, acting on behalf of the California Attorney General as private attorney general."  Hunt qualified his complaint as a "representative" action.  He alleged Simplified violated various provisions of the Labor Code by implementing policies and practices resulting in failure to pay wages (including overtime and final pay), as well as failure to provide adequate meal periods, rest breaks, and accurate itemized wage statements. Hunt sought to recover civil penalties under PAGA for the alleged violations.

### III.  Simplified's Motion to Compel Arbitration

---

[2]  Before filing his complaint, Hunt complied with notice requirements pursuant to section 2699.3 and sent a letter to the California Labor and Workforce Development Agency (LWDA) on April 22, 2021, apprising it of his alleged claims.

3

On September 27, 2021, Simplified moved to compel arbitration of Hunt's PAGA claim and to stay proceedings in the trial court pending arbitration.

Simplified alleged it is "involved in interstate commerce" within the meaning of the Federal Arbitration Act (FAA).[3] Simplified "do[es] business in California and other States" and has "numerous office locations in Southern California and also in States other than California, including Texas, Nevada and South Carolina." Simplified "supplies labor and staffing to customers in California and to customers who are based outside of California."

On May 14, 2020, in connection with his employment by Simplified, Hunt signed the "EMPLOYEE AGREEMENT TO ARBITRATE (Arbitration Agreement) which required he submit all claims and disputes related to his employment with Simplified to binding arbitration. Simplified attached, as an exhibit, a copy of the Arbitration Agreement. It provides in relevant part:

"I acknowledge that I have received and reviewed a copy of the Company's Mutual Arbitration Policy ('MAP') and . . . I understand that the MAP is a condition of my employment. I agree that it is my obligation . . . to submit to *final and binding arbitration any and all claims and disputes*, whether they exist now or arise in the future, that are related in any way to my employment or the termination of my employment with the

---

[3]     The FAA stands as a congressional declaration of a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 232.) To ensure that arbitration agreements are enforced according to their terms, the FAA preempts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. (*Ibid.*)

Company except as otherwise permitted by MAP.  I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against the Company or any affiliated companies or entities, . . . and that, by agreeing to use arbitration to resolve my disputes, both the Company and I *agree to forego any right we each may have had to a jury trial* on issues covered by the MAP, *and forego any right to bring claims on a class or collective basis.*  I also agree that such arbitration will be . . . conducted *under the [FAA] and the applicable procedural rules of the American Arbitration Association.*" (Italics added.)

Simplified also attached as an exhibit to its motion a copy of its MAP.  The MAP provides in relevant part:

Simplified "has adopted and implemented a new arbitration policy, requiring mandatory, binding arbitration of all disputes, for all employees, regardless of length of service."  The MAP is a "mandatory condition of employment" and "will govern any existing and all future disputes between you and the Company that relate in any way to your employment."  The MAP "covers all disputes relating to or arising out of or in connection with employment . . . or the termination of that employment, whether those disputes already exist today or arise in the future."

The type of disputes or claims covered by the MAP include but are not limited to "claims against employees for fraud, conversion, misappropriation of trade secrets, or claims by employees for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment, or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 and its amendments,

the California Fair Employment and Housing Act or any other state or local anti-discrimination laws, tort claims, *wage or overtime claims or other claims under the Labor Code*, or any other legal or equitable claims and causes or action recognized by local, state or federal law or regulations." (Italics added.) The MAP does not cover workers' compensation claims, unemployment insurance claims, or any claims that could be made to the National Labor Relations Board.

The MAP further specifies: "Your decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by the MAP. . . . This *mutual obligation to arbitrate claims means that both you and the Company are bound to use the MAP as the only means of resolving any employment-related disputes covered by the policy*. . . . This mutual agreement to arbitrate claims also means that *both you and the Company forego any right either may have to a jury trial on claims relating in any way to your employment. Because the arbitration proceeding will be a traditional, bilateral arbitration, it also means that both you and the company forego and waive any right to join or consolidate claims in arbitration with others or to make collective or class claims in arbitration, either as a representative or a member of a class*, unless such procedures are agreed to by both you and the Company." (Italics added, underscoring omitted.) The MAP "shall be governed solely by" the FAA.

Simplified also provided a copy of the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association. It provides, in relevant part, under the heading "Jurisdiction" that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity *of the arbitration agreement*." (Italics added.)

Following Hunt's last day of employment, "[d]espite his agreement to arbitrate, [Hunt] initiated a civil action against Simplified and Yusen [with] claims required to be arbitrated under [his] May 14, 2020 Arbitration Agreement." Simplified argued it is entitled under the FAA to an order directing Hunt to proceed to arbitration in accordance with the terms of his Arbitration Agreement. Simplified further argued it is entitled to an order staying further proceedings in this action until arbitration is completed.

On November 12, 2021, Hunt opposed the motion to compel arbitration. Relying on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), Hunt argued the FAA does not apply to a PAGA action, which "is strictly a representative action brought by a plaintiff merely as the 'proxy' of the State's labor law enforcement agencies." Hunt "is not suing in his private capacity" but rather "on behalf of the state of California pursuant to PAGA." "[T]he fact [that Hunt] entered into a predispute agreement to arbitrate . . . his employment claims, does not apply in this instance because the state is not bound by the MAP." Hunt argued "no claims exist in this [action] that permit[] [Simplified] to split [Hunt's] PAGA claims into arbitrable 'individual claims' and 'non-arbitrable representative claims.' "

7

On February 2, 2022, Simplified filed a brief in support of its motion to compel arbitration. Simplified argued Hunt failed to offer any evidence or declaration in support of his claim. Simplified also argued that the Arbitration Agreement signed by Hunt "covers the claims in his lawsuit" as the FAA "has been applied to require arbitration of exactly the same types of Labor Code violations alleged by Hunt." Finally, Simplified argued an "alternative basis for stay also exists" given that the United States Supreme Court "recently granted a petition for writ of certiorari" in *Viking River*, which will decide "the question of whether the FAA requires bilateral arbitration of PAGA claims."

Sandra Senbol (Senbol), the Vice President of Operations at Simplified since 2016, submitted a declaration in support of Simplified's motion, that stated: Simplified "do[es] business in California and other States" and "supplies labor and staffing to customers in California and to customers who are based outside of California." Simplified has "office locations in Southern California and also in States other than California, including Washington and New Jersey."

IV. **Trial Court's Ruling**

On March 2, 2022, the hearing on Simplified's motion to compel arbitration and stay the action took place. Following oral argument by the parties, the court denied Simplified's request that the court take the matter under submission and stay the action pending a decision on the issue by the United States Supreme Court in the *Viking River* case. The court then denied Simplified's motion and ordered Simplified to file an answer within 30 days.

This appeal followed.

8

## DISCUSSION

Relying upon the *Viking River* decision, Simplified argues the FAA applies to Hunt's PAGA claim and preempts California's judicially created "State must consent" rule articulated by a series of post-*Iskanian* appellate decisions barring enforcement of an employee's predispute agreement to arbitrate an "individual" PAGA claim for civil penalties. Simplified contends the trial court's order cannot survive *Viking River*, and requests that we reverse the trial court's denial order and remand with instructions that the trial court compel arbitration of Hunt's "individual" PAGA claim per the terms of the Arbitration Agreement and the incorporated MAP.

Simplified further argues that because the terms of the Arbitration Agreement and MAP "prohibit collective claims in arbitration and because the parties expressly waived any joinder or aggregation of claims, the arbitration proceeding ordered must be an individualized one." Simplified thus requests that further judicial proceedings be stayed to await completion of the arbitration proceeding and to not reach the issue of Hunt's representative/non-individual PAGA claim until after the arbitration. Alternatively, Simplified requests we dismiss Hunt's non-individual claim.

## I. Standard of Review

Where, as here, the trial court's order denying a motion to compel arbitration rests solely on a decision of law, we review that decision de novo. (*Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1136 (*Seifu*); *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 794.)

9

## II. Applicable Law

### A. PAGA

"California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers. Employers who violate these statutes may be sued by employees for damages or *statutory* penalties. [Citations.] . . . Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state unless otherwise provided. [Citation.] Before PAGA's enactment, only the state could sue for civil penalties." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 80 (*Kim*), citing *Iskanian, supra*, 59 Cal.4th at p. 378.)

Before 2004, the LWDA was responsible for collecting civil penalties for labor law violations. (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 127 (*Nickson*).) The Legislature found, however, that the LWDA lacked sufficient resources to keep pace with the sheer number and gravity of offenses. (*Ibid*.) As a solution, the Legislature enacted PAGA to empower aggrieved employees to act as private attorneys general to prosecute and recover civil penalties for Labor Code violations on the State's behalf. (§ 2699, subd. (a); *Nickson*, at p. 127; *Seifu, supra*, 89 Cal.App.5th at p. 1137.) Although an aggrieved employee is the named plaintiff in a PAGA action, an employee suing under PAGA " 'does so as the proxy or agent of the state's labor law enforcement agencies.' " (*Kim, supra*, 9 Cal.5th at p. 81, italics omitted; *Seifu*, at p. 1137.) Thus, "[e]very PAGA claim is 'a dispute between an employer and the state,' " and "[r]elief under PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Kim*, at p. 81.)

Two types of claims authorized by PAGA are " *'individual' PAGA claims*, which are based on Labor Code violations sustained by the plaintiff, [and] *'representative' [or non-individual] PAGA claims*, which are based on Labor Code violations involving employees other than the plaintiff." (*Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 647, italics added.)

### B.   *Iskanian* Decision

In *Iskanian*, *supra*, 59 Cal.4th at p. 382, the California Supreme Court held that "an employee's right to bring a PAGA action is unwaivable." The court rejected the employer's argument that the arbitration agreement was enforceable because it allowed an individual PAGA claim, barring only "representative" (i.e., non-individual) PAGA claims, concluding that "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy" and "unenforceable as a matter of state law." (*Id.* at pp. 360, 384.) *Iskanian* also concluded the FAA did not preempt state law in that respect, because the "FAA's goal of promoting arbitration as a means of private dispute resolution does not preclude our Legislature from deputizing employees to prosecute Labor Code violations on the state's behalf." (*Id.* at p. 360.)

### C.   *Viking River* Decision

On June 15, 2022, the United States Supreme Court decided *Viking River*, addressing the extent to which the FAA preempts the *Iskanian* rule barring PAGA waivers. *Viking River* abrogated *Iskanian* in part and held that an employer could enforce an agreement calling for arbitration of individual PAGA

11

claims. (*Viking River, supra,* 596 U.S. at p. ___ [142 S.Ct. at pp. 1916–1917, 1924–1925].)

The *Viking River* court described the two rules adopted by *Iskanian*. *Iskanian's* "principal rule prohibits waivers of 'representative' PAGA claims . . . . That is, it prevents parties from waiving representative standing to bring PAGA claims in a judicial or arbitral forum." (*Viking River, supra,* 596 U.S. at p. ___ [142 S.Ct. at p. 1916], italics omitted.) *Iskanian's* "secondary rule . . . invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Id.* at pp. 1916–1917.)

The *Viking River* Court explained that PAGA claims are "representative" in two ways. (*Viking River, supra,* 596 U.S. at p. ___ [142 S.Ct. at p. 1916].) First, all PAGA claims are "representative" because a plaintiff brings a PAGA claim as an agent or proxy before the state. (*Ibid.*) Second, some PAGA claims are "representative" because they are brought by employees to address violations suffered by other employees *as well as themselves.* (*Ibid.*) In light of this distinction, the Supreme Court held that *Iskanian's* "principal rule" prohibiting "wholesale" waivers of an employee's right to pursue a "representative" PAGA claim on behalf of the state was not preempted by the FAA. (*Id.* at pp. 1916–1917.) That is because "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." (*Id.* at p. 1919.)

On the other hand, *Viking River* held *Iskanian's* "secondary rule," prohibiting the separation of individual and non-individual PAGA claims, was preempted by the FAA to the extent it

12

"invalidates agreements to arbitrate only 'individual PAGA claims for Labor Code violations that an employee suffered.' " (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1923].) *Iskanian*'s "prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent.' " (*Ibid.*) Accordingly, an arbitration agreement compelling individual claims to arbitration was enforceable as to the individual portion of a PAGA claim. (*Id.* at p. 1925] ["Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim."].)

Viking River stated the "conflict between PAGA's procedural structure and the FAA . . . derives from the statute's built-in mechanism of claim joinder," which permits broad joinder of the claims of other employees to the claim of the individual plaintiff. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1923].) "A state rule imposing an expansive rule of joinder in the arbitral context would defeat the ability of parties to control which claims are subject to arbitration. Such a rule would permit parties to superadd new claims to the proceeding, regardless of whether the agreement between them committed those claims to arbitration. Requiring arbitration procedures to include a joinder rule of that kind compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether. Either way, the parties are coerced into giving up a right they enjoy under the FAA." (*Id.* at p. 1924.)

13

*Viking River* continued, "When made compulsory by way of *Iskanian*, the joinder rule internal to PAGA functions in exactly this way. Under that rule, parties cannot agree to restrict the scope of an arbitration to disputes arising out of a particular ' " 'transaction' " ' or ' "common nucleus of facts." ' [Citation.] If the parties agree to arbitrate 'individual' PAGA claims based on personally sustained violations, *Iskanian* allows the aggrieved employee to abrogate the agreement after the fact and demand either judicial proceedings or an arbitral proceeding that exceeds the scope jointly intended by the parties. The only way for parties to agree to arbitrate *one* of an employee's PAGA claims is to also 'agree' to arbitrate *all other* PAGA claims in the same arbitral proceeding." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1924].) For these reasons, *Viking River* held "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Ibid*.)

Finally, the *Viking River* decision concluded the representative/"non-individual" claim had to be dismissed because the plaintiff no longer had standing to assert the claim. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925].) The court reasoned, "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." (*Ibid*.) The Court continued, "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to

14

maintain suit. [Citation.] As a result, [the plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Ibid*.)

Regarding this final point, Justice Sotomayor observed in a concurrence that, "if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word. Alternatively, if this Court's understanding is right, the California Legislature is free to modify the scope of statutory standing under PAGA within state and federal constitutional limits." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1926].) This issue is presently pending before the California Supreme Court in *Adolph v. Uber Technologies, Inc.*, review granted July 20, 2022, S274671.

III. **Analysis**

Preliminarily, we briefly address Hunt's argument—raised for the first time on appeal—that Simplified "did not demonstrate that the Arbitration Agreement involves interstate commerce" and as such, does not support a finding that the FAA governs the Arbitration Agreement. As a general rule, issues not raised in the trial court cannot be raised for the first time on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.) Simplified relies on this general rule in urging us not to consider Hunt's argument that Simplified failed to show the FAA applied to the Arbitration Agreement.

The general rule against new issues is subject to an exception that grants appellate courts the discretion to address questions not raised in the trial court when the theory presented for the first time on appeal involves only a legal question

15

determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence. (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 326; *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.)

We conclude the exception to the general rule does not apply to the new argument raised on appeal by Hunt. First, the claim that Simplified failed to make a showing that the FAA applied could have been addressed if it had been raised in the trial court because such a showing involves the presentation of evidence. Second, Simplified's motion to compel arbitration expressly alleged it is "involved in interstate commerce" within the meaning of the FAA and explained it "do[es] business in," has "numerous office locations in," and "supplies labor and staffing to customers in" California and in other states. The record provided us includes the declaration of Senbol, the Vice President of Operations at Simplified, who stated: Simplified "do[es] business in California and other States" and "supplies labor and staffing to customers in California and to customers who are based outside of California." Simplified has "office locations in Southern California and also in States other than California, including Washington and New Jersey." The record also includes a copy of the Arbitration Agreement which provides that Hunt "agree[s] that such arbitration will be . . . conducted under the [FAA]" and a copy of the MAP which specifies the MAP "shall be governed solely by" the FAA. The foregoing constitutes adequate evidence in support of our decision not to consider Hunt's newly raised claim.

## A. **Individual Claim**

Simplified argues that *Viking River*'s "definitive interpretation of the FAA requires this Court to enforce the parties' agreement to resolve Hunt's disputes in individual arbitration." Hunt concedes in his brief that in light of *Viking River*, Hunt's individual PAGA claim "should be compelled to arbitration."

We agree and reverse the trial court's order as to Hunt's individual PAGA claim given the *Viking River* decision.

The type of disputes or claims that Hunt agreed to arbitrate include individual PAGA civil penalty claims. The MAP, incorporated into the Arbitration Agreement, expressly provided "wage or overtime claims or other claims under the Labor Code" shall be arbitrated.

In addition, the Arbitration Agreement specifies that Hunt and Simplified "*forego any right to bring claims on a class or collective basis*." (Italics added.) The MAP explicitly provides that "[b]ecause the arbitration proceeding will be a traditional, bilateral arbitration, it also means that both you and the Company *forego and waive any right to join or consolidate claims in arbitration with others or to make collective or class claims in arbitration, either as a representative or a member of a class . . . .*" (Italics added.)

As is apparent, the terms include the waiver of the right to bring a *representative* PAGA action. It does not involve a waiver of the right to bring an individual PAGA action. Under *Iskanian*, "where, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) Under *Viking River*, however, where

17

a predispute agreement provides for arbitrating only individual (not representative) PAGA claims, that portion of the action may be compelled to arbitration. Thus, per *Viking River*, we reverse the denial of the motion to compel arbitration as it relates to Hunt's individual PAGA civil penalty claims and enforce the parties' agreement to resolve the individual PAGA claims via arbitration.

B.     **Representative/Non-Individual Claim**

Simplified argues we need not reach the issue of the remaining representative/non-individual claim and should stay further judicial proceedings until the arbitration is first concluded. In the alternative, Simplified argues that we apply *Viking River* and order the dismissal of any non-individual PAGA claims alleged by Hunt, because he agreed to pursue any claims arising out of his employment exclusively via arbitration—not via court action—and because of Hunt's "waive[r] [of] any right to join or consolidate claims in arbitration with others or to make collective or class claims in arbitration, either as a representative or a member of a class."

Hunt argues his "non-individual" PAGA claims should remain in court, given that, under *Kim*, Hunt retains standing to prosecute such claims, and further, that the parties did not agree to arbitrate them.

We disagree with both parties.

The parties' Arbitration Agreement incorporates the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association and provides that the parties "agree that such arbitration will be . . . conducted under the . . . applicable procedural rules of the American Arbitration Association." It provides, under the heading "Jurisdiction": "The

18

arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity *of the arbitration agreement*." (Italics added.) This, we find, clearly provides that whether the agreement to arbitrate extends to Hunt's non-individual PAGA claims is an issue that falls within the arbitrator's power/jurisdiction and should thus be determined by the arbitrator. (See *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 245 [arbitrability is determined by arbitrator under AAA rules].) The parties' dispute about whether non-individual PAGA claims are governed by the arbitration agreement, in the same way individual PAGA claims are, is an issue for the arbitrator to address. Similarly, whether or not Simplified's request for a stay of judicial proceedings is warranted is a question within the purview of the arbitrator.

Based on the foregoing, we remand with directions that, when the case is ordered to arbitration, the scope of the claims subject to arbitration be submitted for determination by the arbitrator.

## DISPOSITION

The order denying Simplified's motion to compel arbitration is reversed and remanded with directions.

Because reversal is the result of an intervening change in law, in the interests of justice, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.